## In re GIRVIN.

(District Court, N. D. New York. March 12, 1908.)

1. LIMITATION OF ACTIONS—"MUTUAL, OPEN, AND CURRENT ACCOUNT."

An account of loans between the lender and the borrowing firm, kept on the firm's books or on slips of paper, did not constitute a "mutual, open, and current account," within Code Civ. Proc. N. Y. § 386, providing that in an action to recover a balance due on a mutual, open, and current account, where there have been reciprocal demands between the parties, the cause of action was deemed to have accrued from the time of the last item proved in the account on either side.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Limitation of Actions, §§ 137, 296.

For other definitions, see Words and Phrases, vol. 5, p. 4647.]

2. SAME—"MUTUAL ACCOUNT."

A current account kept by a husband of his transactions with his wife's money does not constitute a "mutual account," nor is an account mutual where it simply contains items of money received and paid, nor one in which there were but three items of credit during a period of five years; cash items being also held to form no part of a mutual, open, and running account.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Limitation of Actions, §§ 137, 296.

For other definitions, see Words and Phrases, vol. 5, pp. 4646, 4647.]

3. SAME—DEMAND LOANS—STARTING OF LIMITATION.

Where several demand loans were made by a wife to a firm of which her husband was a member, limitations ran from the date of each loan.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Limitation of Actions, §§ 259–265.]

4. SAME—SUSPENSION OF LIMITATIONS—PART PAYMENT.

A part payment, to be effectual to interrupt limitations, must not only be voluntary and free from any uncertainty as to identification of the debt on which it is made, but it must also be made as a payment on a larger debt, and be so accepted by the creditor.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Limitation of Actions, §§ 632, 634.]

5. SAME—OUTLAWED CLAIMS—PAYMENT—APPLICATION.

Claimant made several loans of money to a firm of which her husband was a member, between September, 1896, and October, 1904, aggregating $10,786.32. Each loan was a separate and distinct transaction, payable on demand; the account being kept on slips of paper and on books of the firm in its business office. After a large part of the loan had become barred by limitations, the husband, without any request from his wife, paid a debt of $1,000 for her, and told her at the time he had charged it to her account; but there was no agreement as to what loans it should be applied to pay. *Held*, that such payment did not constitute a recognition of the outlawed claims, nor a promise to pay them, and should be applied in payment of the remaining loans, against which the statute had not run.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Limitation of Actions, §§ 642, 643.]

6. BANKRUPTCY—CLAIMS—PROOF—DISCLOSURE OF CREDITS.

Where a claimant against a bankrupt had received $1,000 on account of loans made to the bankrupt, but such payment was not disclosed by the claimant's verified proofs of claim, which expressly stated that no part of the debt had been paid, claimant thereby violated Bankr. Act July 1, 1898, c. 541, § 57, subd. "a," 30 Stat. 560 [U. S. Comp. St. 1901, p. 3443], declaring that proof of claims shall be by written statement under oath, signed by the creditor, setting forth the claim, etc., and what, if any, payments had been made thereon.

In Bankruptcy. Review of order of referee allowing claim of Fannie W. Girvin, wife of the bankrupt, for money loaned at different times, at the sum of $10,630.82. The trustee and objecting creditor denies the indebtedness and says most of it is barred by the statute of limitations.

Edward F. Shea, for trustee.
Carl E. Dorr, for objecting creditor.
Edwin Nottingham, for claimant.

RAY, District Judge. While there are many facts and circumstances tending to show that the claimant, Fannie W. Girvin, has no valid claim whatever against the estate of the bankrupt, I am disposed not to disturb the finding of the referee, who saw the witnesses, that she loaned money to her husband, James E. Girvin, and a partner (a limited partnership), at the times and in the amounts specified. These loans were at different dates, in different amounts, and with the agreement that interest at 6 per cent. should be paid. The firm opened no account with claimant on its books, but kept the dates and amounts of these loans on a slip or slips of paper, except the amount of six checks, for $500 each, given by claimant to James E. Girvin. The first loan was the sum of $100, in September, 1896, and on October 20, 1904, the aggregate of the loans, exclusive of interest, was $10,786.32, as shown by the finding of the referee. Thereafter there were loans of $75, December 31, 1903, and $5.50, October 20, 1904. Each loan was a separate and distinct indebtedness or claim, each was due on demand, each drew interest from its date under the agreement, and the statute of limitations ran as against each loan from its date. The evidence is that these were debts of the firm, and so understood and carried, not in the books, but upon these slips. Six checks, of $500 each, were not on these slips.

February 28, 1898, Girvin added up the amount of these loans to that date, exclusive of interest, and entered the total on one of the books of the firm to the credit of the claimant, Fannie W. Girvin. This total was $6,886.32. She had no other account with the firm. October 20, 1904, he added up certain of the other loans, exclusive of any interest, and entered the total of same in said book of the firm to the credit of claimant, viz., $3,900. Subsequently said James E. Girvin showed these entries to his wife, the claimant, and stated, in substance, that this was the account of the amount owing her by the firm. There was no accounting or figuring up between them, and there is no evidence anything further was said or done. There was no credit of interest. Confessedly these aggregates entered on the books did

not show the amount due under this agreement for the loans, as interest accrued and due on demand was not included. As all that was said was merely a statement by the debtor to the creditor that this was the account between the firm and her, I do not think it became an account stated and settled, or that it constituted a waiver of the interest. It was done to show the wife that an account was being kept. I think the rights of Fannie W. Girvin were in no way changed or modified by this transaction or exhibition of these entries, to the making of which she was not a party. It is not shown she assented to what her husband said, or to the correctness of the account. October 27, 1904, the said partnership was dissolved, and Girvin assumed all its debts and obligations, and became individually liable to pay the indebtedness. The firm or partnership was not released.

Fannie W. Girvin owed one Warren H. Girvin, on a promissory note made by her, the sum of $1,000. Of this fact her husband was cognizant. October 28, or November 1, 1905, James E. Girvin paid this note. Payment was not demanded, and there was no request on the part of the claimant here, Fannie W. Girvin, that he should pay it. However, it appears that on several occasions James E. Girvin told his wife that he expected to pay it very shortly. On this subject the evidence of the husband is:

"I paid for her that $1,000 note. Q. What, if anything, had you said to her about paying that note for her prior to this time that you made the payment? A. From time to time, during a period of two or three years, I had said that very shortly I expected to pay the note. Q. What note? A. The $1,000 note that Mr. Girvin held against my wife. Q. And did you say anything to her at the time you paid the note, about having paid it? A. Shortly after. Q. What did you say? A. I told her that I had paid the $1,000 note that my brother held against her, and charged it to her account in the store, and showed her the note canceled. Q. Did she say anything? A. I don't recall what she said."

The wife says her husband simply showed her the note and told her he had charged it to her on her account. She said nothing. In fact, it was charged to her in the firm book referred to on the debit side: "Fannie W. Girvin, $1,000." There was no other payment made on these loans, or either of them.

The trustee and objecting creditor set up the statute of limitations, state of New York, as a bar to so much of this claim as had accrued due more than six years prior to the adjudication in bankruptcy, which was on the 6th day of March, 1906. This would cover all items of the claim prior to March 5, 1900. Between February 15, 1899, and October 31, 1903, no loans were made, or, if made, they were not put on the slips or books. The loans after February 15, 1899, and commencing October 31, 1903, were as follows: October 31st, $500; October 31st, $500; December 17th, $500. In 1904: March 17th, $500; April 12th, $500; July 8th, $500; and after that items aggregating $900, or $3,900 in all. This is the second aggregate amount carried to the firm book; but of this only $819.50 comes from any slip or memoranda, and does not include either of said checks. I find no evidence of an agreement or understanding to pay interest on these loans evidenced by these checks. It would seem they were temporary loans, if loans at all.

The trustee and creditor objecting says the payment of the note of Mrs. Girvin, made by James E. Girvin, and charged to her on the book, must apply on these items of indebtedness incurred subsequent to February 15, 1899, and commencing October 31, 1903, and that it cannot be treated or regarded as a payment made to apply on the prior, stale, and outlawed items of indebtedness; that is, cannot be used as an acknowledgment of the continued existence of same as valid debts or claims, sufficient to take same from the operation of the statute. They insist there is no evidence of an agreement or understanding the payment of the note should so apply, and that in the absence of such evidence the payment of the note and entry on the book were ineffectual to remove the bar of the statute.

Sections 380 and 382 of the Code of Civil Procedure of the state of New York (1 Bliss' N. Y. Ann. Code [5th Ed.] pp. 225, 227) provides as follows:

"Sec. 380. The following actions must be commenced within the following periods after the cause of action has accrued:  *  *  *

"Sec. 382. Within six years: (1) An action upon a contract obligation or liability, express or implied; except a judgment or sealed instrument. *  *  *"

This bars all remedy, unless there is an acknowledgment of the debt or a new promise, which must be in writing and signed by the party to be charged thereby, or a payment thereon of principal or interest.

Section 395, Code of Civil Procedure, reads as follows:

"An acknowledgment or promise, contained in a writing signed by the party to be charged thereby, is the only competent evidence of a new or continuing contract, whereby to take a case out of the operation of this title. But this section does not alter the effect of a payment of principal or interest."

Before considering the effect of the payment of said note by Girvin, it is well to dispose of another section of the Code (section 386) which reads as follows:

"Sec. 386. In an action brought to recover a balance due upon a mutual, open, and current account, where there have been reciprocal demands between the parties, the cause of action is deemed to have accrued from the time of the last item proved in the account on either side."

This account between the firm and this claimant, Mrs. Girvin, kept on the books or slips, did not constitute it a mutual, open, and current account. Adams v. Olin, 140 N. Y. 150, 35 N. E. 448; Matter of Gladke, 45 App. Div. 625, 60 N. Y. Supp. 869; Green v. Disbrow, 79 N. Y. 1, 35 Am. Rep. 496; Compton v. Bowns, 5 Misc. Rep. 213, 25 N. Y. Supp. 465; Raux v. Brand, 90 N. Y. 309. Thus a current account kept by a husband of his transactions with his wife's money does not constitute a mutual account; and an account simply containing items of moneys received and paid is not a mutual, open, and current account within this section. Adams v. Olin, 140 N. Y. 150, 35 N. E. 448. An account upon which but three items of credit appear in five years is not a mutual, open, and running account. Matter of Gladke, 45 App. Div. 625, 60 N. Y. Supp. 869. Cash items form no

part of a mutual, open, and running account. Raux v. Brand, 90 N. Y. 309.

We have, therefore, several separate and distinct loans of money, on interest, made at different dates, and one payment credited to Girvin by himself, which he made for his creditor without her request, but of which she was informed, with a statement that he had charged it to her in her account. There was no agreement or statement on what items of indebtedness or on which loans it should apply as a payment, and it was not apportioned, and the account where it was credited did not show the several loans or the amounts thereof separately. Some—the most—of these items of indebtedness were then barred by the statute of limitations. There were new and recent loans, not affected by the statute, against which in no event had the statute run. Is this payment of $1,000 to be apportioned pro rata to all of these various items, those accruing due before the statute commenced to run, as well as those which came due thereafter, or to those which accrued due thereafter, or is it to be applied on extinguishment of the latest loans? The decisions in the state of New York, as well as elsewhere, seem to settle the question beyond all serious controversy. Being payable on demand, they were due at once, and the statute of limitations ran from the date of each loan. Wheeler v. Warner, 47 N. Y. 519, 7 Am. Rep. 478; Dolan v. Mitchell, 39 App. Div. 361, 57 N. Y. Supp. 157.

There are two ways to take a debt from the operation of the statute of limitations: (1) By an acknowledgment of the debt in writing, signed by the party to be charged; (2) by a part payment of the debt, principal or interest, which is held a recognition of the present existence of the debt, and of an existing present obligation to pay and a promise to pay is inferred. In either case "the general rule is that an acknowledgment or promise to pay, in order to take the debt out of the statute, must satisfactorily and certainly appear to refer to the very debt in question." 25 Cyc. 1330, and numerous cases there cited. "A part payment, to be effectual to interrupt the statute, must be voluntary and free from any uncertainty as to the identification of the debt on which it is made." 25 Cyc. 1371, and numerous cases there cited; Crow v. Gleason, 141 N. Y. 489, 36 N. E. 497; Shafer v. Pratt, 79 App. Div. 447, 80 N. Y. Supp. 109; Barnes v. Pickett, etc., 203 Pa. 570, op. 572, 53 Atl. 378; Burdick v. Hicks, 29 App. Div. 205, 51 N. Y. Supp. 789. "It must also be made as a part payment of a larger debt, and be so accepted by the creditor." Same cases.

In Shafer v. Pratt, supra, the opinion was written by Hiscock, J., now of the Court of Appeals, and was concurred in by the three other judges. There defendant was indebted to the plaintiff on four claims, and defendant knew he was so indebted thereon. Three of these claims were then barred by the statute of limitations. The creditor drew an order upon the defendant, his debtor, for a certain sum, $24, with instructions, contained therein, to "charge same to my account." The defendant kept a book of account with plaintiff, and, having paid the order, testified that he charged the order to plaintiff; that is, pursuant to directions, he charged it to the account. The court said:

"The referee has refused to find that this was such a payment as would revive said claims. We think he was correct in this holding, there being no such evidence as was necessary of an intent upon the part of the defendant to have said payment applied to the claims made by plaintiff which were then outlawed and thereby revive them."

The syllabus of the case reads:

"Where a party, indebted to another upon four claims, honors an order for a sum of money which the creditor draws upon him with instructions to 'charge same to my account,' at a time when three of the claims are outlawed, and it does not appear to which claim the payment is applied by either the debtor or the creditor, such payment will not operate to revive the outlawed claims."

In the case now before this court there was no direction as to the application by any one, and no application of the payment was in fact made. It was simply placed on the book as a credit to the firm and a charge against the wife of one of its members, the creditor. Nothing was said between Mr. and Mrs. Girvin before the money was paid by Mr. Girvin to Warren H. Girvin, which was done without her request, or at the time; and we cannot properly infer that when Girvin made the payment it was done as a payment to the wife, or on her account, to apply on his indebtedness to her. There is not a scintilla of evidence to warrant such a conclusion. True, he thereafter charged her with the amount, and subsequently informed her that he had done so, and she neither assented nor dissented; but he neither said nor did anything that indicated he intended in præsenti to apply the payment to any particular debt or to all the various loans pro tanto. The burden was on the claimant here to show that the payment made to Warren H. Girvin and assented to by silence was intended by James E. Girvin as a recognition of the outlawed claims and a promise to pay them. Crow v. Gleason, 141 N. Y. 489, 493–494, 36 N. E. 497; Matteson et al. v. Palser et al.. 56 App. Div. 91, 97, 67 N. Y. Supp. 612; Wood on Limitations, § 108; Murphy v. Walsh, 113 App. Div. 428, 99 N. Y. Supp. 346; Greenwood v. Judson, 109 App. Div. 398, 96 N. Y. Supp. 147.

In Murphy v. Walsh, supra, the court held:

"The burden is upon a creditor, relying upon a part payment to take a debt out of the statute of limitations, to show that the payment was made upon the particular debt, and was so accepted under circumstances indicating absolute acknowledgment by the debtor that the money was due."

In Matteson v. Palser, supra, the court held:

"The burden rests upon a party, seeking to charge another with an obligation claimed to be barred by the statute of limitations to show that the payments necessary to take the debt out of the statute were made by the party sought to be charged for his own account and with reference to that particular debt."

In Greenwood v. Judson, supra, the niece presented a claim against the estate of her uncle, much of which was outlawed, except for a continuous series of payments proved. It appeared that the claimant married and went away for a time, but returned. It was claimed that this return was under a new contract, and that the payments made subsequently to the return did not operate as a recognition of the claim for services rendered prior to that time; more than six years having

elapsed. Held (McLennan, P. J., dissenting), that the payments took the entire claim out of the statute, "as the proof showed that the contract was a continuing one." Hence it was treated as one of debt. The prevailing opinion demonstrates that the rules of law were stretched to their limit.

In Adams v. Olin, 140 N. Y. 150, 35 N. E. 448, it is held:

"In the absence of a written acknowledgment or promise to take a case out of the statute of limitations, and where a payment is relied upon for that purpose, to operate as such, it must appear that the alleged payment was a deliberate act of the debtor, evidencing or accompanied by some evidence of an intention on his part to thereby acknowledge the existence of the debt. Where it is uncertain whether the alleged payment was such in fact, or was an independent transaction between the parties, not connected with the old debt, no inference can properly be drawn therefrom of an admission thereby of the existence of that debt."

In Crow v. Gleason, 141 N. Y., at page 494, 36 N. E., at page 498, the court said:

"And, even if it be true that the defendant never made any particular direction as to how the payments should be applied, that is not sufficient to save the bar of the statute, unless the plaintiff can show that they were made by the defendant consciously to apply upon the whole account, and in recognition of the whole account."

In Barnes v. Pickett, etc., 203 Pa., at page 572, 53 Atl., at page 379, the court said:

"No quality of the payment is more strictly required than that it shall be upon the very debt sued for. In Burr v. Burr, 26 Pa. 284, the leading case on the subject in Pennsylvania, it was said: 'The acknowledgment must not only be clear, distinct, and unequivocal of the existence of a debt; but it must also be plainly referable to the very debt upon which the action is based.' And in Barclay's Appeal, 64 Pa. 69, Sharswood, J., said: 'There can be no more unequivocal acknowledgment of a present existing debt than a payment on account of it; * * * but then it must plainly appear, and not be matter of conjecture merely, that the payment was made on account of the very debt which is in dispute.' See, further, as to the strictness of the identification required, Landis v. Roth, 109 Pa. 621, 1 Atl. 49, 58 Am. St. Rep. 747, and Rosencrance v. Johnson, 191 Pa. 520, 43 Atl. 360."

In Ft. Scott v. Hickman, 112 U. S., at page 163, 5 Sup. Ct., at page 63, 28 L. Ed. 636, the court said:

"Although an acknowledgment need not, under the Kansas statute, amount to a new promise, yet the rule is applicable that an acknowledgment cannot be regarded as an admission of indebtedness, where the accompanying circumstances are such as to repel that inference, or to leave it in doubt whether the party intended to prolong the time of legal limitation. Roscoe v. Hale, 7 Gray (Mass.) 274. * * * The settled doctrine in Kansas, and the weight of authority elsewhere is that statutes of limitation are statutes of repose, and not merely statutes of presumption of payment. Therefore, to deprive the debtor of a benefit of such a statute by an acknowledgment of indebtedness, there must be an acknowledgment to the creditor as to the particular claim, and it must be shown to have been intentional."

In Camp v. Smith, 63 Hun, 634, 18 N. Y. Supp. 523, a number of obligations existed, one of which was barred, and a general payment was made. Held not to take the outlawed one out of the operation of the statute.

In Blair v. Lynch, 105 N. Y. 638, 11 N. E. 949, it is said:

"The efficacy of a payment to avert the effect of the statute as a bar resides in the conscious and voluntary act of the debtor, explainable only as a recognition and confession of the existing liability."

In Shepherd v. Thompson, 122 U. S., at page 237, 7 Sup. Ct. 1232, 30 L. Ed. 1156, the court said:

"If the bar is sought to be removed by the proof of a new promise, that promise, as a new cause of action, ought to be proved in a clear and explicit manner, and be in its terms unequivocal and determinate, and if any conditions are annexed they ought to be shown to be performed."

If that be the rule as to a written promise, it is perfectly clear that, when the new promise is left to inference from a part payment, the evidence should be clear, explicit, unequivocal, and determinate that such payment was made to apply on the particular debt in question and with an intent to renew it.

At the time this note owing by the claimant was paid by James E. Girvin, October 28, 1905, and the amount charged to her, as stated, the account on the books of the firm showed two items or claims of hers against the firm, one of $6,886.32, entered February 28, 1898, and clearly barred by the statute of limitations, and the other, for $3,900, entered October 20, 1904, not barred. There had been a hiatus of over three years between the last of the loans making up the $6,886.32 and the first of the loans making up the $3,900, with no credit or payment whatever. When the credit to the firm of $1,000, the payment of the note of Warren H. Girvin, and the charge to the claimant of that amount were made, not a word was said indicating that it was to apply on both of such amounts. It is just as probable, to say the least, that Girvin intended the $1,000 to apply on the $3,900 aggregate items, as that it should apply on both; and more so, as there can be no inference or presumption that it was to apply on both. The inference is the contrary, within all the cases. Adams v. Olin, 140 N. Y. 150, 35 N. E. 448; Shafer v. Pratt, 79 App. Div. 447, 80 N. Y. Supp. 109; Blair v. Lynch, 105 N. Y. 636, 638, 11 N. E. 947; Bailey v. Crane, 21 Pick. (Mass.) 323. To warrant an inference that Girvin intended to apply the $1,000 generally on both these claims, as shown by the books, and thus revive the old and outlawed one, the law requires either direct proof, or proof of facts and circumstances, making that inference imperative, or at least proper and legitimate. Of such proof this case is utterly barren. It is just as consistent and probable that it was to apply on the $3,900 as on the prior, stale, aggregated amount. In Bailey v. Crane, supra, the court said:

"An acknowledgment, to take a debt out of the statute, must satisfactorily appear to refer to the very debt in question."

It is also a fact of importance and significance that, when this claimant made out and presented her verified proofs of claim, she made no reference to any payment on account of these loans, the subject-matter of her claims, but, on the other hand, expressly stated therein that "no part of said debt has been paid," and scratched

out from the blank the word "except," indicating that payments, if any, were to be there inserted in the blank space left for the purpose. In this she violated the express provision and requirement of subdivision "a," § 57, of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 560 [U. S. Comp. St. 1901, p. 3443]), which reads as follows:

"57. Proof and Allowance of Claims. (a) Proof of claims shall consist of a statement under oath, in writing, signed by a creditor setting forth the claim, the consideration therefor, and whether any, and, if so what, securities are held therefor, and whether any, and, if so what, payments have been made thereon, and that the sum claimed is justly owing from the bankrupt to the creditor."

The claim as presented, so far as material, and so far as it specifies the claim itself, reads as follows:

"That James E. Girvin, the person by whom a petition for adjudication of bankruptcy has been filed, was at and before the filing of said petition, and still is, justly and truly indebted to said deponent in the sum of fourteen thousand four hundred ninety-one and $^{18}/_{100}$ ($14,491.18) dollars; that the consideration of said debt is as follows: Consideration for moneys loaned and advanced to bankrupt at divers times between and inclusive of the 12th day of September, 1896, and the 1st day of October, 1904, including interest on said amounts—that no part of said debt has been paid; that there are no set-offs or counterclaims to the same."

After the year in which proofs of claim were to be filed under the provision of law, she was permitted, against objections, to amend by filing an unverified statement, in the nature of a bill of particulars, in which the alleged payment was mentioned. In substance and effect this made a new and a different claim, presented after the expiration of one year from the adjudication and appointment of a trustee. It is an important fact, however; for it tends to show that the $1,000 had been in fact applied to the payment and satisfaction or extinguishment of other claims not included in the one presented. There is no obscurity in the section of the bankruptcy act under which this claim was made out and presented, and the blank form on which it was made called particular attention to the necessity for stating payments, if any. While mere technicalities should not prevail to defeat a just and existing claim, it is hardly consistent with the due administration of justice to permit an old and outlawed claim of $6,886.32 to be revived in favor of the bankrupt's wife by uncertain and equivocal evidence that a payment was made and applied thereon, after the claimant has distinctly and unqualifiedly sworn that "no part of said debt has been paid; that there are no offsets or counterclaims to the same." It seems to me that there is evidence which not only rebuts any inference that possibly might be drawn from the entries on the books to the effect that the $1,000 applied on all the loans mentioned, but which shows that such $1,000 was not so applied or intended to be. The claimant has not only failed to sustain the burden of proving a payment on the loans aggregating $6,886.32, those made prior to March, 1900; but the evidence, facts, and circumstances show affirmatively that no payment was ever made to apply thereon, or made with intent that same should apply thereon. The evidence to substantiate this large, and to the extent mentioned

stale, demand, comes from the bankrupt and his wife, the claimant, and is to be closely scrutinized. In re Rider (D. C.) 3 Am. Bankr. Rep. 192, 96 Fed. 811; In re Wooten (D. C.) 9 Am. Bankr. Rep. 247, 118 Fed. 670; Matter of Brewster, 7 Am. Bankr. Rep. 486.

There will be an order reversing the order of the referee, disapproving the findings and conclusions, and sending the matter back to the referee, with instructions to make an order disallowing all of the claim for the loans made prior to March, 1900, and allowing the other items specified in his findings and allowed by him, amounting to some $3,900, with interest from the date of each loan to the time· the $1,000 was paid, when that payment will be deducted, and interest allowed upon the balance.