No. 25,627.

GEORGE W. SPENCER, *Appellee*, v. ROY SOWERS, *Appellant.*

SYLLABUS BY THE COURT.

1. LIMITATION OF ACTIONS—*Accrual of Cause—Nature of Account.* In an action to recover a money judgment, proof that plaintiff loaned defendant $100 at one time, $725 at another time, and $11.50 at a later time, where there were no negotiations for the loaning of any one sum totaling these three amounts, and the loans were so made pursuant to three separate express agreements that defendant would execute and deliver to plaintiff his interest-bearing promissory notes for the several respective sums so loaned, and where the borrower failed to execute and deliver the notes, the resulting rights of plaintiff and liabilities of defendant were not governed by the law of open, mutual, current accounts so as to halt the running of the statute of limitations on such inherently distinct and separate causes of action accruing to plaintiff through these unrelated transactions.

2. SAME—*Mutual, Open and Current Account.* The essentials of an open, mutual, current account considered, and *held,* that three unrelated loans of money made at separate intervals of time by a lender to a borrower, where no payments are made on account nor any acknowledgment thereof in writing by the borrower, do not constitute an open, mutual, current account so as to save from the bar of the statute of limitations such of the loans as were more than three years old at the time the action to recover thereon was begun.

Appeal from Mitchell district court; WILLIAM R. MITCHELL, judge. Opinion filed April 11, 1925. Reversed.

*R. L. Hamilton,* of Beloit, for the appellant.

No appearance was made for the appellee.

The opinion of the court was delivered by

DAWSON, J.: On December 11, 1922, plaintiff brought an action against defendant for $1,000 for money alleged to have been loaned by him to defendant on May 7, 1921, which the latter agreed to repay in one year from that date with interest at 7 per cent per annum. Plaintiff alleged defendant's default and prayed judgment for $1,000 and interest at 7 per cent per annum from May 7, 1921.

On April 16, 1923, plaintiff, on his own motion, was permitted to amend his petition, and in it he alleged that defendant was indebted to him upon an account current, for items of money loaned, viz.:

| | |
|---|---:|
| August 30, 1919, to a loan of money | $100.00 |
| September 5, 1919, to a loan of money | 725.00 |
| August 17, 1921, to a loan of money | 11.50 |
| Total | $836.00 |

The amended petition continued:

"Plaintiff says that said defendant agreed to pay to plaintiff the aforesaid loans . . . within one year from the dates aforesaid, at the time when said loans were made to said defendant.

"Plaintiff further says that no part of the principal of said loans, nor any interest thereon, on either of said loans, has been paid, and that there remains due and unpaid to this plaintiff, upon said account current, a balance in the sum of $875, together with interest thereon, at the rate of six per cent per annum from the date of each of the above-described loans, until paid."

Plaintiff prayed judgment for $875 and interest on each of the items from the dates of the alleged loans.

Defendant filed a general denial and invoked the statute of limitations. Jury trial; verdict and judgment for $1,041.59 in favor of plaintiff; appeal.

Defendant assigns various errors, the first of which relates to the overruling of his demurrer to plaintiff's evidence on which the verdict and judgment were based. That evidence, given chiefly by plaintiff himself, was to this effect:

Plaintiff was married to defendant's mother in 1917. On August 30, 1919, he loaned defendant $100 by a check, which he gave in payment for some plows purchased by defendant. Defendant told plaintiff he would give plaintiff a note for the loan, but he never did; defendant also said he would pay plaintiff, but he never did.

"Q. Well, what then did you do? A. I put it down on an account book."

Plaintiff also testified that on September 6, 1919, he loaned defendant $725, for which defendant was to give a note, but he never did.

"Q. Then what did you do? A. I set it down on my book, account book.
"Q. Has he ever paid any of that? A. No, sir."

Plaintiff further testified that he repeatedly asked defendant for payment, but the latter "said he didn't have any money." On August 17, 1921, he loaned defendant $11.50. On this item, as on the others, when he asked defendant for payment and did not receive it, he told defendant he "would put it on the book account." Plaintiff asked defendant several times for the money.

"Q. Did you ever ask him to give you a note? A. Yes, sir.
"Q. What did he say about that? A. He didn't give me a note. . . .
"Plaintiff put down the amounts in the account book each time, about the time defendant got the money.
"Q. And did you each time pull out your account book and write it down there? A. I don't think he was present each time."

Over defendant's objection, the book account was introduced, viz.:

"Roy Sowers, Dr. George W. Spencer. August 30th, 1919, loan of money, $100; September 6th, 1919, loan of money, $725; August 17th, 1921, loan of money, $11.50."

There was considerable testimony given in defendant's behalf, but it did not strengthen plaintiff's cause, and for the purpose of testing the propriety of the demurrer it must be totally disregarded. Our main inquiry concerns the sufficiency of plaintiff's evidence to show the existence of a course of business dealings between plaintiff and defendant to create an open, mutual, running account which would save the alleged loans of $100 and $725 of August and September, 1919, from the bar of the three years' statute of limitations (R. S. 60-306) when this action was begun, December 11, 1922. We note but pass by the question whether the amended petition filed April 13, 1923, was sufficiently germane to the cause of action stated in plaintiff's original petition, and assume that the propriety of the demurrer to plaintiff's evidence depends on the rights and liabilities of the parties as of December 11, 1922.

What is a mutual, open account current of which the law takes cognizance in determining the rights and liabilities of debtor and creditor litigants in apparent qualification of the statute of limitations? We have no statute specifically defining and governing such accounts, as some states do, so we must glean a definition from the general drift of the authorities, including our own few precedents, touching this subject. The texts and decisions speak of such accounts indifferently as "open accounts," as "running accounts," and "open current accounts," or as "mutual, open and current accounts." Aside from statutory governance, all these terms mean substantially the same thing. A mutual, open, current account may be defined as an account usually and properly kept in writing, wherein are set down, by express or implied agreement of the parties concerned, a connected series of debit and credit entries of reciprocal charges and allowances, and where the parties intend that the individual items of the account shall not be considered independently but as a continuation of a related series, and that the account shall be kept open and subject to a shifting balance, as additional related entries of debits or credits are made thereto, until it shall suit the convenience of either party to settle and close the account; and where, pursuant to the original, express or implied intention, there is to be but one single and individual liability arising from such series of

related and reciprocal debits and credits, which liability is to be fixed on the one party or the other as the balance shall indicate at the time of settlement or following the last pertinent entry of the account. (*Carney v. Havens*, 23 Kan. 82; *Waffle v. Short*, 25 Kan. 503; *Grisham v. Lee*, 61 Kan. 533, 60 Pac. 312; *Milling Co. v. Railway Co.*, 82 Kan. 256, 108 Pac. 137; *Elevator Co. v. Railway Co.*, 98 Kan. 478, 158 Pac. 859; Note to *Goodsole v. Jeffery*, 202 Mich. 201, 1 A. L. R. 1057, 1060-1074; Note to *Hodge v. Manley*, 25 Vt. 210, 60 Am. Dec. 253, 258; Buswell on Limitations and Adverse Possession, § 194; 1 C. J. 598 *et seq.;* 25 Cyc. 1118; 17 R. C. L. 804.)

There seems to be a general agreement among the authorities that where the items of an account are all on one side, the account does not have the character of an open, running, mutual account so far as the statute of limitations is concerned. (*Elevator Co. v. Railway Co.*, 98 Kan. 478, 158 Pac. 859; Buswell on Limitations and Adverse Possession, § 194; 17 R. C. L. 730, id. 805.) In *Elevator Co. v. Railway Co.*, supra, the plaintiff presented a claim against a railway company for repairing freight cars to make them fit for use in hauling grain in bulk. Plaintiff had repaired an aggregate of 5,127 freight cars furnished to it by the railway company from time to time between December 7, 1908, and May 15, 1911. These cars had been furnished on separate orders and for unrelated shipments of grain. Plaintiff's action to recover for repairing these cars was begun February 25, 1913, and it was tried and determined in the district court on the theory that there was but one implied hiring of plaintiff to fix the cars, and that the repairing of the 5,127 cars was done under one continuous contract, which in effect constituted an open, mutual, running account. This court disapproved the judgment, and held that each separate order for cars and the repairing thereof constituted a separate transaction on which an action might have been maintained, and that the statute of limitations began to run on each of such separate causes of action when they respectively had accrued.

In *Hodge v. Manley*, 25 Vt. 210, 60 Am. Dec. 253, it was said:

"When the account is all on one side it has not the character of mutual accounts, and so far as the statute of limitations is concerned, the cause of action arises from the date of each item; and they are respectively barred when more than six years [three years in Kansas] have intervened between their dates and the commencement of the suit. (Syl. ¶ 2.)

"When it is said, however, that every new item of credit, or part payment, revives all preceding charges and prevents the operation of the statute of

limitations, it must be understood with this qualification: that the item of credit must arise from the mutual act and consent of both parties, and with the understanding, express or implied, that it is to enter into and become a part of their mutual dealing or account, and be the subject of future adjustment in ascertaining the general balance due thereon. For there is no propriety in permitting a party to defeat the operation of the statute on a mutual account by making entries of credit, unless the charge has arisen by consent, or in their usual course of dealing." (p. 214.)

In *In re Wooten,* 118 Fed. 670, it was held:

"A claim for sums of money lent to the bankrupt at different times, for which no notes were taken, does not constitute a running account; for each item is a separate and distinct transaction, unaffected by any other, so far as relates to the running of limitation against it." (Syl. ¶ 5. See, also, *In re Girvin,* 160 Fed. 197 and citations.)

It is conceivable that certain items of an account properly charged and entered at different dates, although all on one side of such account, might constitute but one entire transaction and that the statute would not begin to run until such transaction was consummated at the time when the last entry of the account was properly made. Thus, if I should make a contract with a materialman for whatever materials I might need to build a house, and these materials should be delivered to me from time to time as they were needed, it would seem proper to hold that notwithstanding the various deliveries were charged and dated in the account separately there was but one obligation growing out of such contract, and that the lumberman would have but one indivisible cause of action against me and that it would accrue at the time the deliveries were completed. In such case, of course, the items charged would all be on one side of the account, so that the account might not exactly meet all the requisites of a mutual, open, running account; but so far as concerned the statute of limitations the result would be the same. The cause of action would be for the total amount of all the related items of the account, and would accrue, and the statute would begin to run, on the date of the last delivery of materials pursuant to the one original contract.

Perhaps the same principal could be applied to a supposed account of moneys loaned. To illustrate: If plaintiff and defendant in this case had made an agreement that plaintiff was to loan $836.50 to defendant as the latter might need the money, and pursuant to such agreement plaintiff gave defendant $100 at one time, $725 at another, and $11.50 at a still later date, a liberal application of the

rule relating to open, mutual, running accounts would permit a court to hold that if the last item of such account, the $11.50, had been paid pursuant to the contract for the loan of the entire sum, $836.50, within three years, an action would lie for the recovery of the entire amount, although part of the items had been paid more than three years before the action was begun. And in such supposed case the fact that all the items were on one side of the account would not defeat a recovery on the related items over three years old.

But we have no such case before us. Here these three alleged loans were separate, independent and wholly unrelated transactions, and the proof on plaintiff's behalf showed that they were so intended. Indeed, plaintiff's evidence was that on the $100 loan and the $725 loan, not only was there no intention that these should be dealt with as related items of a mutual, current account, but all the testimony in plaintiff's behalf was that defendant had agreed to give his separate interest-bearing promissory notes for each of these loans; and it was merely because defendant failed to keep his alleged agreements to give his notes therefor that plaintiff made a memorandum of these loans in an account book. But setting these loans down in an account book worked no magical change in the nature of plaintiff's rights or defendant's liabilities. It did not create an open, mutual, running account between the parties. It follows that the bar of the three years' statute of limitations had run against the alleged loans of $100 and $725 at the time this action was begun.

Judgment reversed and cause remanded for further proceedings not inconsistent herewith.