**E. P. HINKEL AND COMPANY, Inc.,**
a corporation, Appellant,

v.

**WASHINGTON CARPET CORPORATION,**
a corporation, Appellee.

No. 3659.

District of Columbia Court of Appeals.

Argued June 1, 1965.

Decided July 21, 1965.

Ferdinand J. Mack, Washington, D. C., with whom Arthur J. Hilland and James E. Hogan, Washington, D. C., were on the brief, for appellant.

Frank B. Tavenner, Washington, D. C., for appellee.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

MYERS, Associate Judge.

Washington Carpet Corporation, appellee, filed suit against E. P. Hinkel and Company, appellant, on an account due in the amount of $4,414.09. In its answer appellant admitted owing all of this amount except $171.18 and counterclaimed for $10,550 from Washington Carpet Corporation covering accounts receivable, labor performed and value of equipment arising out of their business relationship. The trial judge ruled that the liability of appellee for any of the items in the counterclaim should be determined before making findings as to specific amounts due. After a hearing the counterclaim was dismissed on the ground it was barred by the Statute of Limitations and judgment was entered against Hinkel for the full amount of the principal claim. This appeal followed.

Appellant contends that since the items in its counterclaim were part of a mutual running account with appellee during the period of their relationship, the statutory limitation had not run against the counterclaim.

A mutual account arises where there are mutual dealings and the account is permitted to run with a view to an ultimate adjustment of the balance between the parties. Spencer v. Sowers, 118 Kan. 259, 234 P. 972, 39 A.L.R. 365 (Kan.1925); In re Vicen's Estate, 1 Wis.2d 193, 83 N.W.2d 664 (1957). There must be one account on which the items on either side belong and on which they operate to extinguish each other *pro tanto,* so that the balance on either side is the debt between the parties. Yardley v. Clothier, 51 F. 506, 507 (3rd Cir. 1892); Moreland v. Dickerson & Baker Lumber Co., 12 Ala.App. 576, 68 So. 526, 527 (1915). It is not enough that the parties should have cross demands or cross open accounts. American Raveller Co. v. Rensselaer & Valatie Mills, 185 App.Div. 898, 171 N.Y.S. 214 (1918). There must be a mutual agreement, express or implied, that the claims upon the one side and the other are to be set off against each other. Parker v. Shell Oil Co., 29 Cal.2d 503, 175 P.2d 838 (Cal.1947). The off-setting demands need not accrue simultaneously. Schwindt v. Billiwhack Stock Farms, 45 Cal.App.2d 208, 113 P.2d 902 (Cal.1941). The effect of finding a mutual account has been clearly stated in this jurisdiction in Woodward v. Armstrong, 64 App.D.C. 4, 73 F.2d 513 (1934) as follows:

> "It is settled law that where there is a mutual open account between two parties it is implied that they have mutually consented that the items occurring from time to time in favor of the respective parties shall operate as mutual setoffs, and that the shifting balance, when either or both shall call for it, shall be the debt, and for this reason the statute of limitations does not run during such a state of mutual dealings, but only from the date of the last item; and if the last item is within the statutory period of limitations, it draws after it the items beyond that time." [1]

It is necessary to review the dealings and business relationship between appellant and appellee in order to understand the arrangement between them for handling their respective accounts. For about six years pri-

---

1. Cited with approval in Wesley v. Walter A. Brown, D.C.App., 196 A.2d 921 (1964).

or to mid-1959, Washington Carpet occupied space in the premises of appellant Hinkel Co. for which the latter received 15% of the former's gross business. The work which Washington Carpet performed fell into two categories: old carpeting and new carpeting work. "Old carpeting" work arose when someone who had purchased carpeting from Hinkel Co. desired either to shift the carpeting in its present location or move it from one location to another. These requests were referred to Washington Carpet. When Hinkel Co. made a sale of carpeting the sales price included the cost of installing or laying it. Installation was done by Washington Carpet and was characterized as "new carpeting" work. The parties orally agreed that, as to new carpeting, Hinkel Co. would assume responsibility for credit purchases, but Washington Carpet would service the carpets for one year pursuant to Hinkel Co.'s one-year guaranty to customers. They agreed that billing for the old carpeting work would be done through Hinkel Co. It was also agreed that Hinkel Co. would pay Washington Carpet at the end of each week for both old and new carpeting work carried out by the latter during that week and that Washington Carpet would accept a chargeback on its account with Hinkel Co. should any old carpeting account prove uncollectible. This arrangement continued until the spring of 1959 when Hinkel Co. entered into a working agreement with another organization, terminating its relationship with Washington Carpet, which accepted this change and moved from the Hinkel Co. plant, taking with it two truckloads of machinery at the latter's request for storage at its new location. At that time it was agreed that Hinkel Co. owed Washington Carpet approximately $7,000 for carpeting work performed during June and July of 1959. It was further agreed that there was a large number of old carpeting accounts which had not yet been paid by the customers but for which Hinkel Co. had already compensated Washington Carpet. In addition, there were several new carpeting accounts still within the one-year guaranty. The parties further agreed that Hinkel Co. would pay the amount it owed Washington Carpet when and as it collected outstanding old carpeting accounts receivable, with the right to charge back any uncollectible items and to use one-third of these collections to build up a reserve fund to be used to compensate the latter for any work it might be required to do under the new carpeting guaranties outstanding. Pursuant to this agreement, Hinkel Co. prepared a "Termination Schedule" and made payments thereunder to Washington Carpet. Hinkel Co. also transmitted lists of old carpeting accounts which had proved uncollectible and which it sought to charge back to Washington Carpet. As a result Hinkel Co. determined there was owing it from Washington Carpet the sum of $10,550, which forms the basis of the counterclaim.

In the present case there were clearly mutual dealings between the parties with an express, albeit oral, agreement to allow the account to run with a view to an ultimate adjustment of the final balance between them. Items were entered on both sides at periodic intervals which operated to extinguish each other *pro tanto* and the claims upon each side were set off against each other. We hold there was a mutual account between the parties and that the statutory limitation began running only from the date of the last entry on the account. As this entry was made within three years prior to filing of the counterclaim by Hinkel Co., it was error to have dismissed it on the basis of the Statute of Limitations.

Appellant also claims as error the trial court's refusal to admit in evidence its letters written to Washington Carpet. These letters containing the Termination Schedule and lists of old carpeting accounts uncollectible were rejected as self-serving. The general rule forbids admission of letters prepared and transmitted by the author to the party against whom he wishes to prove the facts therein set forth and therefore any failure to answer such adverse as-

sertions in the absence of circumstances making an answer requisite or natural has no effect as an admission. A. B. Leach & Co. v. Peirson, 275 U.S. 120, 128, 48 S.Ct. 57, 72 L.Ed. 194 (1927). However, in view of the close business relationship and mutual dealings of the parties in the present case, we are of the opinion that, under these circumstances, the trial judge should have received and considered these letters, together with all other evidence bearing upon the issues, and his failure to do so was error.

The record before us does not provide an adequate basis for determination of the amount properly allowable on the counterclaim and the case must therefore be remanded with directions to grant a new trial upon the claims of both parties.

Reversed and remanded for a new trial.