No. 45,937

SHELDON GRAIN AND FEED COMPANY, *Appellant*, v. EDWARD SCHUETZ and EDNA SCHUETZ, husband and wife, *Appellees*.

(483 P. 2d 1033)

Opinion filed April 10, 1971.

*Charles S. Arthur*, of Manhattan, argued the cause and *Charles D. Green*, of Manhattan, was with him on the brief for appellant.

*Morris D. Hildreth*, of Coffeyville, argued the cause and *Richard L. Becker*, of Coffeyville, was with him on the brief for appellees.

The opinion of the court was delivered by

FROMME, J.: This is an appeal by plaintiff from a limited judgment entered by the trial court against the defendants for poultry feed and supplies purchased from the plaintiff.

Plaintiff, a feed and grain merchandising company, sued to recover a balance of $7875.21 due on purchases made by defendants between August 25, 1961 and January 27, 1967.

The judgment entered in the amount of $1844.45 plus interest limited plaintiff's recovery to purchases made by defendants within the three years next preceding the filing of the petition. This limitation was based upon K. S. A. 60-512.

K. S. A. 60-512 in pertinent part reads:

"The following actions shall be brought within three (3) years: (1) All actions upon contracts, obligations or liabilities expressed or implied but not in writing. . . ."

The trial court held that the feed purchases were separate individual transactions each with its own separate liability and cause of action.

The plaintiff-appellant contends the action was on one open, mutual, running account between the parties, and that its cause of action was properly brought to recover the entire balance due on the account.

Items of a mutual, open, running account which are within the period of the statute of limitation draw after them items beyond that period. In such cases the statute of limitation does not run against each item separately, but only against the balance due. It commences to run from the time the last item is rightfully credited to the party against whom the balance is due. (*Waffle v. Short,* 25 Kan. 503; *Sacher v. Paige,* 149 Kan. 662, 88 P. 2d 1013; *Shepard v. Klein,* 172 Kan. 250, 239 P. 2d 930.) In such case the last item so credited to the party against whom the balance is due is not payment of any particular item against him, but is in a sense treated as part payment of every item rightfully charged against him in the entire account.

In limiting the judgment the trial court made four findings of fact:

"1. This account by reason of the treatment and practices of the parties consisted of a series of individual transactions each with its own cause of action and termination date under K. S. A. 60-512.

"2. The defendants never made any payment not directed to, and received and recorded by plaintiff as, payment of a specific item or items of charge.

"3. The defendants did not acknowledge any account other than the specific items paid.

"4. The defendants did receive all merchandise they are alleged to have received."

The first three findings are challenged on appeal as not being

supported by substantial competent evidence. The evidence upon which these findings must rest is undisputed. Therefore, the question of its sufficiency to support the findings is one of law which an appellate court may determine. This court's function is confined to a determination of whether or not there is substantial competent evidence to support the trial court's findings. (*Sullivan v. Sullivan,* 196 Kan. 705, 413 P. 2d 988. See also Hatcher's Kansas Digest, Permanent Supplement Vols. 1-3, Appeal and Error § 502.)

The evidence establishes that plaintiff is a partnership doing business as a feed and grain merchant. The defendants are engaged in the business of feeding and raising poultry. During the period from 1961 to 1967 defendants placed 337 separate orders with plaintiff for poultry feed and supplies. The feed and supplies were delivered to defendants' farm by plaintiff's employees along with sales tickets showing the items purchased and the sales price. During this same period defendants mailed or delivered 175 separate checks to plaintiff in payment. Some payments were made within a week and others as long as six months after the feed was delivered to the defendants. All of these checks contained a notation at the bottom indicating the amount paid was for a designated number of tickets identified by the date or dates the purchases were made. During this same period plaintiff purchased feed sacks from the defendants. The sacks were paid for by entering a credit on plaintiff's books at the time the sacks were delivered by defendants to plaintiff's employees. There were 36 separate credits to defendants entered in plaintiff's books for feed sacks. When the credits were entered on the books of plaintiff a credit ticket was issued and mailed or delivered to defendants. These credit tickets showed the amount of the current credit and the running balance due from the defendants on all unpaid purchases.

It was agreed and the court found that the defendants received all the merchandise listed and charged to them on the books of the plaintiff. These separate purchases of merchandise varied in amounts from a low of $6.70 for "Malathion" received July 18, 1962, to a high of $362.96 for "corn" received April 2, 1963. Purchases were made three or four times each month throughout the period. Payments were made throughout the period with no more than two months between any two payments. The first sale of sacks for credit was on May 16, 1962 and credits for sacks were made during each year thereafter. The final sale of sacks was on January 27,

1967, and credit to the account balance of $7880.21 was given in the amount of $5.00 thereby reducing the balance to $7875.21 as of that date. The petition was filed and service obtained on April 26, 1967.

The plaintiff's bookkeeper used a double entry system of bookkeeping. Each purchase was listed under defendants' account by ticket number, date, item and price. The price on each purchase ticket was added to the balance remaining due on all previous purchases and carried forward. When a payment was received an entry was made "Paid on a/c". The date of payment was listed along with the ticket number and amount. The balance forward was reduced by the amount of the payment. The same practice was followed when credit was given for sacks except the entry made was "Cr: Sacks", and the number of sacks received and the credit given was entered.

The practice of defendants with regard to their purchases was to keep the charge tickets in a box and when defendants desired to make a payment they picked out one or more of the tickets to be paid and wrote their check for the combined amount. A notation was made on the check as to the number of tickets and the dates of purchase. Defendants also kept the credit tickets which they had previously received for sacks sold to plaintiff. In making a payment they sometimes added the purchase tickets then subtracted any credit ticket they may have received before arriving at the amount of the check they were about to issue to plaintiff. When a check was received by plaintiff's bookkeeper, after entering the amount paid on account and adjusting the balance to be carried forward, she went back in the account record and placed a check mark in the books opposite the purchase ticket designated by the date on defendants' check. The bookkeeper testified she did this as a double check since the defendants always put the ticket numbers on their checks and this was for their reference. She further testified the tickets were not paid in chronological order, some were old tickets. At the times defendants made payments the bookkeeper mailed credit tickets which listed the balance remaining due on the account. She did not credit any payments to any particular tickets but credited them to the account.

The defendant, Edna Schuetz, testified she did not agree to the balances remaining due as shown on the credit tickets issued by plaintiff. She testified as follows:

"A. It was at different times over the telephone when I would tell him that wasn't right that he had on those tickets.

"Q. Tell him what wasn't right?

"A. What he had at the top of those tickets, the balance on the tickets."

There is no testimony in the record as to any agreement between the parties when their business dealings began. The copy of the account shown in the record indicates that defendants had purchased poultry feed from plaintiff prior to August 5, 1961, but on that date the entire balance of the account was paid. Thereafter defendants ordered and received the merchandise listed in the account, made payments and sold the sacks to the plaintiff. There was never an understanding as to when payment or payments had to be made.

Now with this background let us examine the court's findings of fact.

The court found that each of these purchases, whether Malathion at $6.70 or corn at $362.96, was an individual transaction each with its own cause of action and termination date. In support thereof the defendants quote from the case of *Spencer v. Sowers*, 118 Kan. 259, 234 Pac. 972 as follows:

". . . A mutual, open, current account may be defined as an account usually and properly kept in writing, wherein are set down, by express or implied agreement of the parties concerned, a connected series of debit and credit entries of reciprocal charges and allowances, and where the parties intend that the individual items of the account shall not be considered independently but as a continuation of a related series, and that the account shall be kept open and subject to a shifting balance, as additional related entries of debits or credits are made thereto, until it shall suit the convenience of either party to settle and close the account; and where, pursuant to the original, express or implied intention, there is to be but one single and individual liability arising from such series of related and reciprocal debits and credits, which liability is to be fixed on the one party or the other as the balance shall indicate at the time of settlement or following the last pertinent entry of the account. . . ." (pp. 261, 262.)

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"There seems to be a general agreement among the authorities that where the items of an account are all on one side, the account does not have the character of an open, running, mutual account so far as the statute of limitations is concerned. . . ." (p. 262.)

Defendants contend that the account of plaintiff does not have the character of an open, running, mutual account and that the present case is governed by *Spencer v. Sowers*, supra. The law quoted from that case is the law in Kansas. However, the case is

not controlling here. In *Spencer* an individual sued another individual for money loaned by him which was to be repaid in one year. The money was allegedly loaned to defendant on three separate occasions, $100 on August 30, 1919, $725 on September 5, 1919, and $11.50 on August 17, 1921. The court found the three loans were separate, independent and wholly unrelated transactions. No payments had been made on any of them. The court correctly held this did not create an open, running mutual account.

Generally, a mutual, open, running account, which within the period of limitations draws all items beyond that period into the balance currently owing and due, may arise when a merchant sells merchandise to a customer and extends credit on the sales. Matters such as openness, currently, homogeneity and mutuality should be considered and given weight by the courts in identifying such an account. (39 A. L. R. Anno. p. 369-373.) Openness may be indicated when further dealings between the parties are contemplated and when some term or terms of the sale or sales is left open and undetermined. Currency is indicated when the continuity of the account has not been broken by payment, by the statute of limitation or by change of ownership. Homogeneity generally refers to the nature of the items which make up the account, and mutuality refers to the mutuality of dealings between the parties which may give rise to offsetting liabilities. (See also 54 C. J. S. Limitations of Actions, § 165; 1 Am. Jur. 2d, Accounts and Accounting § 16, § 18; 57 A. L. R. Anno. p. 201.)

Examining the present account in the light of the evidence it appears to have all the elements which make up a mutual, open, running account. The plaintiff, a merchant, sold many items of merchandise to defendants, as regular customers, and extended credit on the sales over a six year period. There was an openness of the account indicated because further dealings between the parties were contemplated at all times prior to January 27, 1967, and at least two matters were left open and undetermined—the due date and the correctness of the balance brought forward. The account continued current throughout the six year period. It was never paid in full, items debited and credited were relatively continuous, and there was no change in the parties. The general nature of the items which made up the account was the same (poultry feed and supplies) and there were mutual dealings between the parties which gave rise to offsetting liabilities.

In support of the second finding of fact made by the trial court the defendants rely on *Neal v. Gideon,* 157 Kan. 1, 138 P. 2d 419 and *Edelblute v. Waddell & Reed, Inc.,* 171 Kan. 508, 233 P. 2d 757, and contend that when a debtor designates which item a payment is to be applied on such a payment cannot be considered a general payment on the account which extends the statute of limitations.

*Neal v. Gideon,* supra involved an "account stated" between a doctor and patient. The patient requested a bill for professional services. The bill was forwarded to the patient and the patient without objection made a payment thereon. The rules of law applied in *Neal* apply to an "account stated" and are not in point here.

*Edelblute v. Waddell & Reed, Inc.,* supra was an action to recover upon four separate and distinct sales of corporation stock. Payments by the debtor were made to the stockbroker without any direction on which particular transaction they were to be applied. It was held in the absence of directions the broker had the right to apply the payments on all four separate sales.

None of the cases relied on by defendants to support this contention relate to payments made on mutual, open, running accounts. When an account is a mutual, open, running account the debtor cannot unilaterally destroy the nature of that account or shorten the period of limitation by making payment of specific items previously included and debited in the account. (*Pride v. King,* 133 Me. 378, 380, 178 A. 716. See also 54 C. J. S. Limitations of Actions § 165 p. 117.)

Clearly the defendants' method of keeping the purchase and credit tickets as well as their practice of indicating the dates of the tickets covered by their checks was only a matter for the convenience of the defendants. The parties did not consider or treat these 337 purchases as separate individual transactions. The manner of making payments was a matter of convenience to the defendants and did not destroy the nature of this account.

The court's finding number three is not supported by substantial competent evidence. Throughout the six year period the defendants were kept advised of the balance brought forward on the account and their only quarrel was as to the correctness of the balance. During the trial the defendant, Edna Schuetz, testified that she told the plaintiff the balance on the tickets was not right. In addition the defendants delivered sacks to the plaintiff thirty-

six different times and received payment by credit being applied to reduce the balance due. Once these sacks were delivered and the account credited it was not within defendants' power to change the effect of those credits. The final sale of sacks to plaintiff was made on January 27, 1967, and the account was credited with $5.00, the usual price paid for 100 sacks.

There is no substantial competent evidence in this record to support the trial court's finding that the account consisted of a series of individual transactions each with its own cause of action and termination date.

The judgment limiting plaintiff's recovery to those items purchased within three years next preceding the filing of the petition is reversed. The case is remanded to the trial court with directions to enter judgment in favor of the plaintiff in accordance with the views expressed in this opinion.