VERNON LEWIS, DOING BUSINESS AS LEWIS OIL COMPANY, APPELLEE, V. OSCAR HISKEY, APPELLANT.

89 N. W. 2d 132

Filed April 4, 1958. No. 34341.

J. Max Harding and E. D. Warnsholz, for appellant.

Ginsburg, Rosenberg & Ginsburg, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff, Vernon Lewis, doing business as Lewis Oil Company, originally filed this action against defendant, Oscar Hiskey, in the municipal court where defendant was admittedly served with summons on December 14, 1955. Therein and on appeal to the district court, plain-

tiff sought to recover upon an alleged open running unpaid general account for petroleum products purchased by defendant, the date of the last purchase being December 15, 1951. In the municipal court defendant's answer was a general denial. After a trial on the merits in that court, a judgment was rendered in favor of plaintiff and against defendant, whereupon he appealed to the district court. Therein plaintiff's petition was duly filed and defendant answered, denying generally and alleging that the statute of limitations had barred all claims of plaintiff prior to December 13, 1951. Plaintiff's motion to strike defendant's plea of the statute of limitations from his answer because same had changed the issues on appeal was overruled. Thereafter, defendant's motion for summary judgment was overruled, from which he appealed to this court where such appeal was dismissed on December 8, 1956. See Docket No. 34150. After issuance of the mandate of this court, defendant filed an amended answer which denied generally and alleged in substance that all of the plaintiff's claims had been barred by the statute of limitations. The statute relied upon was section 25-212, R. R. S. 1943.

Some 12 interrogatories submitted by plaintiff were served upon defendant, who answered in part as hereinafter indicated. A jury was waived and the cause was tried on the merits to the court, whereupon a judgment was rendered in favor of plaintiff and against defendant for $615.77 and costs, including an allowance of $75 for services of plaintiff's attorneys. Upon the overruling of defendant's motion for new trial, wherein he assigned as error that the judgment was not sustained by sufficient evidence and was contrary to law, defendant appealed, renewing said assignments. We conclude that they have no merit.

There are well-established rules of law which are applicable and controlling in this case. They are that: "The findings of a court in a law action in which a jury is waived have the effect of a verdict of a jury and will

not be disturbed unless clearly wrong." In such a case, "it is not within the province of this court to resolve conflicts or to weigh evidence. If there is a conflict in the evidence this court in reviewing the judgment rendered will presume that controverted facts were decided by the trial court in favor of the successful party and the findings will not be disturbed unless clearly wrong." Wallace v. Insurance Co. of North America, 162 Neb. 172, 75 N. W. 2d 549. See, also, Ord v. Benson, 163 Neb. 367, 79 N. W. 2d 713.

As early as In re Estate of Holloway, 89 Neb. 403, 131 N. W. 606, this court held: "Where there is a running account between the parties consisting of unsettled items of debit and credit and the dealing between the parties was continuous, and not interrupted for a sufficient length of time for the running of the statute, such items of account are not barred by the statute of limitations." In the opinion it was said: "The administrator urges that some of these disputed items were barred by the statute of limitations. Where there are unsettled items of debit and credit in an account between parties, each succeeding item is applied upon the true balance. If the dealings between the parties are suspended for a sufficient length of time, the statute of limitations will run, but, if the transactions are continuous, the statute will not apply." Such conclusion was predicated upon the premise that whether there was a running account consisting of unsettled items of debit and credit, and the dealings between the parties were continuous and not suspended for a sufficient length of time for the statute of limitations to run, depends upon the facts and circumstances of each particular case. See, also, Fairchild v. Fairchild Clay Products Co., 141 Neb. 356, 3 N. W. 2d 581.

In 54 C. J. S., Limitations of Actions, § 165, p. 118, citing In re Estate of Holloway, *supra,* and other authorities, it is said: "In order for later items to take earlier items out of the operation of the statute of limitations

the account must be continuous; and where the transactions between the parties are independent and remote the rule does not apply."

In Pankau v. Boyer, 141 Neb. 310, 3 N. W. 2d 634, relied upon by defendant, a jury was waived and the cause was tried to the court on the pleadings alone. It is entirely distinguishable from the case at bar. Plaintiff therein simply brought an action on account for services rendered and medicines furnished defendants. He attached a copy of the debit and credit account to his petition and made it a part thereof, which demonstrated upon its face that dealings between the parties were not continuous but were unrelated, separate, independent transactions which had been interrupted for a sufficient length of time for the running of the statute, except on the last item of December 18, 1935. Any other conclusion than that the account was so barred by the statute of limitations would have been clearly wrong. The same may also be said of the facts in Reeves v. Nye, 28 Neb. 571, 44 N. W. 736, relied upon by defendant. On the other hand, Mizer v. Emigh, 63 Neb. 245, 88 N. W. 479, relied upon by defendant, simply held that: "A payment made on an account by a person other than the debtor, without his authority, knowledge and consent, will not toll the running of the statute of limitations." That opinion is not in point or controlling here.

In the light of the foregoing authorities, we have examined the record, which, as summarized and important here, discloses the following: Plaintiff had been engaged in the operation of a wholesale and retail petroleum products and related merchandise business for some 27 or 28 years under the trade name of Lewis Oil Company. During 1950 and 1951 he maintained an established place of business at 1600 P Street in Lincoln. During that period, plaintiff's wife also worked at plaintiff's place of business, waiting on trade and keeping all of plaintiff's books and records. Also, during

that period, defendant was engaged in the trucking business and owned and operated a car and several dump trucks in the hauling of gravel and rock in and out of Lincoln and between Lincoln, Hastings, and McCook. Defendant furnished the trucks, paid all expenses for their operation and maintenance, and generally furnished drivers for the trucks used in his business, but sometimes the company for whom he hauled furnished the drivers of the trucks used by defendant, and he did not know who such drivers were.

In December 1950 defendant, who did not know how much merchandise would be required or what jobs it would be used upon, had a conversation with plaintiff wherein defendant requested the right to purchase from plaintiff petroleum products on credit to be used in defendant's business. Thereupon, it was agreed that plaintiff would furnish defendant such products for an indefinite period with no time fixed for payment, so that defendant would not be required to pay cash or furnish his drivers with needed cash every time they purchased plaintiff's products, and that defendant could pay for same each week or month or at such intervals as might be convenient and he was able to do so. In that connection, defendant admitted that it was intended that he could accumulate purchases over a period of time which was not fixed, so that he could subsequently make payments thereon and would not have to be bothered with making payments on each transaction as it arose or at any particular time.

In that connection, plaintiff produced his original ledger sheet pertaining to defendant's account, which had been made by plaintiff's wife from original sales slips depicting purchases by defendant which were all produced, offered in evidence, and received without objection. The ledger was a regular form of permanent business record such as was regularly made and kept by plaintiff and his wife along with all other accounts. It showed the exact state of plaintiff's account with de-

fendant, including all items purchased by defendant, the date thereof, the charges made therefor, and all items of credit for payments made by defendant upon a general running continuous account, rather than at any particular time or upon any specific purchases. After appropriate foundation had been laid, plaintiff's ledger sheet was offered and received in evidence.

That ledger sheet disclosed substantially the following: Defendant made purchases on December 21, 26, and 29, 1950, leaving a balance of $6 unpaid. He made purchases on January 4, 9, 11, 15, 17, 19, 20, and 25, 1951, leaving a balance of $45.68 unpaid. He made a purchase on February 3, 1951, and, for the first time, paid $20 on account, leaving a balance of $27.68 unpaid. He made a purchase on March 26, 1951, leaving a balance of $28.76. He made purchases on April 7, 11, 13, 14, 17, 18, 19, 20, 25, and 28, 1951. In that connection, he paid $11 on account April 11, 1951, and $50 on account April 28, 1951, leaving a balance of $61.19 unpaid. He made purchases on May 8, 11, 19, 25, and 29, 1951, and paid $20 on account May 19, leaving a balance of $79.17 unpaid. He made purchases on June 11, 16, and 29, 1951, leaving a balance of $96.32 unpaid. He made purchases on July 6, 14, 16, 19, 21, 23, 24, 27, and 31, 1951. Also, on July 31, 1951, he paid $50 on account, leaving a balance of $130.06 unpaid. He made purchases on August 1, 2, 3, 6, 8, 10, 11, 12, 16, 22, and 24, 1951, leaving a balance of $240.52 unpaid. He made purchases on October 16, 17, 20, 22, 23, 24, 25, 26, 27, 29, 30, and 31, 1951. Also, on October 16, 1951, he paid $25 on account, leaving a balance of $340.98 unpaid. He made purchases on November 2, 3, 6, 9, 12, 13, 14, 17, 19, 21, 23, 24, 26, 28, 29, and 30, 1951. Also, on November 17, 1951, he paid $67 on account, leaving a balance of $530.80 unpaid. He made purchases on December 1, 3, 4, 5, 6, 7, and 15, 1951.

In that connection, the evidence shows that on some of the foregoing dates, defendant made two or more purchases. Also, on December 6, 1951, defendant paid

$150 on account, leaving a balance unpaid on December 15, 1951, of $470.07, which amount with interest plaintiff sought to recover in this action, having testified that it was the correct amount due and unpaid. Admittedly, demand for payment therefor and failure or refusal to pay same was made prior to the making of defendant's income tax return in 1952.

The original sale slips were made out in duplicate by plaintiff or his wife, covering each individual purchase. Some of them were signed and some were unsigned. However, each and all of them showed the particular transactions had with defendant or his family or his employees for defendant on his general account. Some of such slips even identified defendant's trucks or cars which were used at the time of the particular purchases. In that connection, defendant admitted that he was a trucker during 1950 and 1951, and did business with plaintiff during that period, but stated that he did not purchase any of the merchandise as shown by the sale slips which were not signed by him. As will be observed, the record as heretofore and hereinafter set forth refutes such denial. On the other hand, defendant admitted that he had a conversation with plaintiff about purchases on credit in December 1950; that he made the payments heretofore set forth on general account; and that he did purchase the merchandise where his signature appeared on the slips. He also testified that he did not know two drivers whose names appeared on five sale slips, but that was not strange in view of the fact, as aforesaid, that admittedly the companies for whom defendant worked sometimes furnished drivers for trucks used by defendant in his business, and he did not even know who such drivers were.

It will be noted that by interrogatories served upon and in answers made thereto by defendant, which were offered and received in evidence, defendant admitted that during 1950 and 1951 he owned and operated three Ford dump trucks and a passenger car, and directly

employed four persons in his dump truck business operations of which he kept records. He admitted that purchases of petroleum products were made from plaintiff and used in the operation of his dump truck business during 1950 and 1951, and that some such purchases were made from plaintiff's wife. Defendant admitted that he kept purchase tickets and a general ledger record of his operations, but stated that they would not be made available for inspection by plaintiff or his attorneys. At the trial, however, he testified as an excuse for not producing such tickets and records that he had lost most of them except those in possession of his attorneys, and they were not produced.

Defendant denied that he made the purchase evidenced by the sale slip dated December 15, 1951, and made out to "Oscar Hiskey," which indicated that he had purchased two quarts of U. S. I. for $1.60, and one valve core for 10 cents, a total of $1.70. Such slip was separately identified as exhibit 2-G after having been previously offered and received in evidence without objection. As a matter of fact, however, defendant's brief filed in this court admitted that he had made that particular purchase and contended that the statute of limitations had barred all claims except that one.

On the other hand, plaintiff's wife testified that with the exhibit before her, she personally recalled the specific transaction on December 15, 1951, whereat she personally made out the sale slip and waited upon defendant, who personally made the purchases. She remembered such transaction with defendant, because "U. S. I.," a permanent anti-freeze, was very expensive, so, as shown on the slip, she first charged defendant $2 for two quarts thereof, and so indicated on the slip, then crossed it out and charged defendant $1.60 therefor, because he used a lot of it and she recalled that they had theretofore given him a special lower price upon it. As a matter of fact, in order to identify the purchase thereof, and the price of $1.60, plaintiff's wife wrote "Oscar,"

which appears in parentheses under the $1.60 charge, so that she would remember who got it at that price, and so that defendant would see that he did so. We conclude that the evidence heretofore set forth was amply sufficient to support the findings and judgment of the trial court that the statute of limitations did not bar plaintiff's claim.

Plaintiff also argued in this court that the defense of the statute of limitations was not available to defendant in the case at bar for the reason that it was not asserted as an issue upon the original trial in the municipal court and that its inclusion in defendant's answer filed in the district court unlawfully changed the issues upon appeal. However, in the light of our conclusions in this case, we do not deem it necessary to discuss that question.

For reasons heretofore stated, we conclude that the judgment of the trial court should be and hereby is affirmed. All costs are taxed to defendant, including $150 as fees for the services of plaintiff's attorneys in this court, as provided by section 25-1801, R. R. S. 1943.

AFFIRMED.