**Ira C. JORDAN, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 57-C-16.**

United States District Court E. D. Wisconsin.

Feb. 9, 1960.

William R. Gold, Milwaukee, Wis., for plaintiff.

Edward G. Minor, U. S. Atty., by Howard C. Equitz, Asst. U. S. Atty., Milwaukee, Wis., for defendant.

GRUBB, District Judge.

■ This is an action instituted by the plaintiff to recover from the defendant the sum of $3,820.61 which plaintiff alleges is due him on an open mutual account with the defendant. The defendant has moved to dismiss the action on the ground that the action is barred by the applicable statute of limitations, Section 2401(a), Title 28 U.S.C.A.

Both parties have submitted affidavits and other documentary evidence in support of their respective positions. It was conceded by both parties on oral argument that there is no dispute as to any fact material to the issues. The court will, therefore, treat the motion as one for summary judgment.

Plaintiff was a dealer in war surplus assets which he purchased from an agency of the United States Government on a discount basis or which he sold for the government on a commission basis. These purchases from or sales for the government covered a period from August 16, 1946 to October 7, 1947.

In his complaint the plaintiff has set out what he alleges is an open mutual account with the defendant with a balance in his favor in the sum of $3,820.61. This account contains nineteen different entries and covers a period from August 16, 1946 to April 5, 1951. The first twelve entries in the account, which extend to October 7, 1947, reflect actual purchases or sales, while the latter seven entries reflect only financial adjustments which one party or the other feels should be made to the prior transactions. Of the nineteen entries, only two are dated later than the year 1948; namely, items 18 and 19, and these are dated April 5, 1951.

■ This action was commenced on January 16, 1957. To be timely, as-

suming there is an open mutual account, the account must contain items dated January 16, 1951, or later for the statute of limitations starts running in the case of an open mutual account from the date of the last item proved on either side. Corinne Mill, Canal & Stock Co. v. Toponce, 1894, 152 U.S. 405, 14 S.Ct. 632, 38 L.Ed. 493; 54 C.J.S. Limitations of Actions § 165, Mutual Accounts Current. The latter authority states at pages 112 and 113:

> "It is the general rule, either by judicial construction of the general statutes of limitation or under statutes expressly so providing, that where there is a mutual, open, and current account consisting of reciprocal demands the cause of action to recover the balance is deemed to accrue at the date of the last item proved, and the statute of limitations runs from that time, so that, if the last item on either side of the account is not barred, it 'draws to itself all the other items' which will become barred only when the statute has run against the last. It is immaterial how far back the account commenced; nor is it material whether the last item of the account is on the debit or credit side."

On the face of the account set out in the complaint, it would appear that the last two entries, i. e. items 18 and 19, fall within the statutory period. It is the defendant's position that these two items are not proper entries in an open mutual account, and, thus, there are no entries later than January 16, 1951. Item 17 is dated December 13, 1948. Plaintiff has conceded on oral argument that item 18 is not a proper entry in an open mutual account. Thus, the sole issue remaining centers around the propriety of item 19.

Item 19 as set out in the account reads as follows:

| No. | Date | | | "Statement of Account As of April 5, 1951 | |
| | | | | Dr. | Cr. |
| 19. | Apr. 5, 1951 | By Amount Conceded As Owing Ira C. Jordan, per statement of Account, General Services Administration Letter, dated April 5, 1951 | | | 84.96" |

The letter dated April 5, 1951, on which it is based is quoted below:

"Dear Mr. Jordan:

"A short time ago you were present in this office at which time you agreed to accept the sum of $628.23 in full satisfaction of your claim with respect to the sale of surplus property on Sales Document No. 4506068. We requested the Comptroller's Office to process a check in said amount payable to you in order to forward the same to the United States Attorney at Milwaukee, Wisconsin, for delivery to you upon your execution of a complete release, releasing this Administration from any and all further liability in connection with said sales document. It now develops that this office has a claim against you in the sum of $543.27 for an overpayment on account of improper commissions.

"Please advise us as to how you wish to handle your payment of the sum of $543.27 to this Administration. If you wish said sum to be deducted from the agreed amount of $628.23, we will have processed a check payable to your order in the

sum of $84.96 representing the difference between our claim against you in the sum of $543.27, and your claim against us in the sum of $628.23, or we will have a check processed to you in the full amount of $628.23 upon your undertaking to deliver to the United States Attorney your certified check in the sum of $543.27, payable to the Treasurer of the United States.

"Please advise us as soon as possible.

"Yours very truly,

"Harold M. Kaufmann,
"Attorney
"Regional Counsel's Office"

It is the plaintiff's contention that the defendant by this letter conferred a credit upon the plaintiff in the sum of $84.96 and, in effect, created item 19.

Item 19 had its genesis in 1947 when the plaintiff purchased from the government a Sly Dust Filter Unit on August 20th for $2,561.13. This is item 7 in the account. On October 7, 1947, the plaintiff purchased a Sly Dust Collecting System from the government for $4,100. This is item 11. Both purchases were cash transactions.

When the machinery mentioned in item 11 was received by the plaintiff, certain essential parts were missing. The plaintiff contended that such missing parts decreased the value of the machine by $3,-353.36, and, therefore, he credited the government's account with only $746.64. This is item 12.

On March 9, 1948, the government issued Debit Memorandum No. 484. This memorandum called for the payment of $543.27 to the government by the plaintiff because of irregularities in regard to the transaction reflected in item 7. This is item 15 in plaintiff's account.

Thereafter, on December 13, 1948, the government offered to allow the plaintiff a credit of $628.23 because the machinery described in item 11 was delivered to the plaintiff with certain parts missing. This offer was rejected by the plaintiff but

nonetheless appears in the account as item 16.

In view of the above transactions and the letter of April 5, 1951, it is clear that item 19 has no independent existence of its own for it is merely the difference between item 16 ($628.23) and item 15 ($543.27). In other words, item 19 is based on the defendant's offer to pay $628.23 (item 16) for the missing parts if the plaintiff would pay $543.27 in settlement of the government's claim (item 15).

With this analysis of item 19 in mind, it can be fairly stated that the basis for its entry in the account is simply a 1951 offer of the defendant to set off opposing claims. Both of the claims which figured in the offer were first advanced by the government in 1948, and the plaintiff could have taken advantage of such a setoff any time after December 13, 1948, the date of item 16. Consequently, if it can be assumed that a credit was ever conferred upon the plaintiff, the credit must have been conferred in 1948 for both items in the setoff were then made available to the plaintiff by the defendant.

In the case of Empire Institute of Tailoring, Inc. v. United States, Ct.Cl. 1958, 161 F.Supp. 409, the following is found at page 410 of the opinion:

"This court has consistently held that a claim first accrues on the date when all events have occurred which fix the liability, if any, of the United States and entitles the claimant to sue thereon. Levine v. United States, 137 F.Supp. 955, 133 Ct.Cl. 744; Sese v. United States, 113 F.Supp. 658, 125 Ct.Cl. 526; Gray v. United States, 124 Ct.Cl. 313; Reliance Motors, Inc., v. United States, 81 F.Supp. 228, 112 Ct.Cl. 324."

While this statement was not made in reference to a situation involving a mutual open account, it is nonetheless applicable to the case at bar for it reflects the general law in regard to statute of limitation questions. Applying

954

this principle to the facts of the present case then, there can be no doubt that item 19 is at the very least improperly dated for all events which were necessary to fix liability, if any there be, occurred no later than December 13, 1948.

■ Regardless of the timing involved, it is clear that in this case there is no possibility that a credit could have been conferred upon the plaintiff by the defendant. Even if it be conceded that the setoff of two items in an account could result in the creation of a third entry, it is undisputed that this offer of setoff was never accepted by the plaintiff. It was an offer to compromise a dispute between the parties, which offer of compromise was never accepted. Plaintiff is attempting to use the unaccepted offer of compromise as a proper entry in this account to toll the running of the statute. Until this offer was accepted by the plaintiff, there could be no credit for there could be no obligation which would bind the defendant.

The plaintiff has steadfastly refused to accept the $628.23 offered by the defendant, and his claim for damages in this suit is based in part on the contention that the missing parts decreased the value of the equipment by $3,353.36, rather than by the first-mentioned sum. In his complaint the plaintiff also takes the position that item 15, the defendant's claim for $543.27, is erroneous.

By refusing to accept the offer of compromise and by refusing to admit the validity of the government's claim, the defendant has effectively destroyed the basis for the setoff and, consequently, has destroyed any possibility that a credit could be created. In this respect it is stated in 54 C.J.S. Limitations of Actions § 165 at page 119:

"* * * The determination of whether an account is a mutual, open, and current account depends on the transactions and the intent of the parties, and not on the manner in which the account is kept.

*  *  *  *  *  *

"In brief, in order to determine whether a particular item is properly a part of a mutual account, the true inquiry is whether the item represents *a legal indebtedness* that should go into the account of the parties, and not whether either party has or has not in fact embraced the controverted item in his account." (Emphasis added.)

The defendant stated in its brief that item 19 resulted from "the manipulation of other items for the purpose of excluding the account from the statute of limitations." This assertion is supported by the fact that item 19 does not constitute any portion of the plaintiff's damage claim which amounts to $3,820.61. Thus, we have a situation where the plaintiff is inconsistently claiming a credit for purposes of the statute of limitations but does not (and cannot) claim the same credit in his computation of damages.

The plaintiff's damage figure is actually composed of two alleged claims against the defendant which grew out of two transactions which took place in 1947. One is the claim for $3,353.36 which is asserted against the government because of the dust collecting equipment which was purchased by the plaintiff and delivered on October 7, 1947, with various parts missing (items 11 and 12). The other is a claim of the plaintiff for commissions earned as of January 15, 1947, in the sum of $467.25. (This latter claim, although unquestionably earned, has never been paid for the defendant contends that it holds unpaid claims against the plaintiff which more than offset the commissions earned.)

It is apparent that the $3,820.61 damage figure is composed of these two claims and no others for two reasons. First, and most obvious, is the fact that the $3,353.36 claim and the $467.25 claim total exactly $3,820.61. Second, and more important, is the fact that items 11 and 12 reflect the last actual purchase and sale between the parties, and at this point, October 7, 1947, the account bal-

ances show that debits, $9,038.12, exceed credits, $5,217.51, by exactly $3,820.61.

Therefore, although there are seven entries in the plaintiff's account which are later in time than item 12, they actually play no part in the final computation of damages for they are simply proposed adjustments to prior actual transactions. In addition, these latter seven entries have been so set off against one another that a return to the account balance of October 7, 1947, is inevitable.

The defendant's motion for summary judgment is granted. The clerk is directed to enter judgment in favor of the defendant and against the plaintiff dismissing the action and for its costs and disbursements.