T. S. McSHANE Co., INC., A CORPORATION, APPELLANT, v. DOMINION CONSTRUCTION COMPANY, A CORPORATION, APPELLEE.

278 N. W. 2d 596

Filed May 8, 1979. No. 42149.

Raymond, Olsen & Coll, for appellant.

Wright & Simmons and John A. Selzer, for appellee.

Heard before BOSLAUGH, CLINTON, BRODKEY, and HASTINGS, JJ., and HICKMAN, District Judge.

HICKMAN, District Judge.

This is an action for monies owed to appellant, the plaintiff below, by the appellee, the defendant below, for parts, equipment, and services. The parties will be hereinafter designated as they were in the trial court.

There are only two issues before the court. The first deals with the trial court's sustaining a special appearance filed by the defendant objecting to jurisdiction of the court over the defendant and the second with whether the statute of limitations barred the action.

Plaintiff filed its action to collect the balance due on the account on August 7, 1973, and summons was issued and served on defendant by serving the secretary of defendant corporation on August 7, 1973. Defendant filed a special appearance on September 6, 1973, objecting to the jurisdiction of the court over the person of the defendant and supported same by affidavit. On November 23, 1973, a hearing was held on the special appearance at which time the affidavits of the defendant and counteraffidavits of the plaintiff were received into evidence. The trial court sustained the special appearance and granted plaintiff 20 days to take further steps to obtain good service upon defendant. The affidavits received into evidence at the hearing on November 23, 1973, have not been made a part of the bill of exceptions. The plaintiff did not stand on the service obtained and on December 13, 1973, plaintiff filed an amended petition. Summons was issued and valid service obtained on defendant on December 13, 1973.

Plaintiff assigns the sustaining of defendant's special appearance as error; however, this assignment of error cannot now be considered by this court in the absence of a bill of exceptions for the hearing on November 23, 1973.

We said in Anderson v. Autocrat Corp., 194 Neb. 278, 231 N. W. 2d 560: "It is true, of course, that an affidavit may be used to prove the service of a summons, notice or other process in an action. See § 25-1244, R. R. S. 1943; Erdman v. National Indemnity Co., 180 Neb. 133, 141 N. W. 2d 753 (1966). While the law permits the use of affidavits for that purpose, and thus avoids problems relating to same

with reference to the 'hearsay' rule, it is still a requirement of law that before such affidavit may be considered in this court, it must first be introduced and received in evidence. The mere filing in the office of the clerk of District Court and its inclusion in the transcript is not sufficient. In State ex rel. Pierson v. Fawcett, 2 Neb. Unoff. 243, 96 N. W. 219 (1901), it was held that an affidavit may be used to prove the service of process; but it is not part of the bill of exceptions, unless presented to the trial court. In Spidel Farm Supply, Inc. v. Line, 165 Neb. 664, 86 N. W. 2d 789 (1957), this court stated: 'There is no affidavit preserved or contained in the bill of exceptions in this case. The effect of this omission is that any affidavit considered by the district court is not before and may not be considered by this court. An affidavit used as evidence in the district court cannot be considered on appeal of a cause to this court unless it is offered in evidence in the trial court and preserved in and made a part of the bill of exceptions. Berg v. Griffiths, 127 Neb. 501, 256 N. W. 44, 102 A. L. R. 1124; Harder v. Harder, 162 Neb. 433, 76 N. W. 2d 260. The fact that an affidavit used as evidence in the district court was filed in the office of the clerk of the district court and made a part of the transcript is not important to a consideration and decision of an appeal in the cause to this court. If such an affidavit is not preserved in a bill of exceptions, its existence or contents cannot be known by this court. Harder v. Harder, *supra*; Frye v. Frye, 158 Neb. 694, 64 N. W. 2d 468.' Numerous other cases to the same effect are collected in 2 Nebraska Digest, Appeal & Error, Key No. 523(2)."

The ruling of the District Court sustaining the special appearance, in the absence of a bill of exceptions for that hearing, must be presumed correct and the burden lies with the plaintiff to show the contrary. Plaintiff has not carried its burden in this

respect by providing this court with a bill of exceptions containing the affidavits.

Prior to a trial on the merits, defendant filed a motion under section 25-221, R. R. S. 1943, to try the issue of the applicability of the statute of limitations separately from any other issue. This motion was sustained and a trial was had to the court on the sole issue of the applicability of the statute of limitations on April 6, 1978. The court rendered its decision on April 24, 1978, finding that plaintiff's cause of action on the disputed items accrued on September 6, 1969, which was 10 days after the invoice for the last disputed item and that plaintiff's claim was therefore barred by the statute of limitations except for the item of $15.58 which the court retained for further decision. A judgment of dismissal against the plaintiff was granted except for the $15.58 item.

The findings of a court in a law action in which a jury is waived have the effect of a verdict of a jury and will not be disturbed unless clearly wrong. Lewis v. Hiskey, 166 Neb. 402, 89 N. W. 2d 132; Wallace v. Insurance Co. of North America, 162 Neb. 172, 75 N. W. 2d 549.

A resume of the facts is necessary to a decision on plaintiff's second assignment of error.

Plaintiff corporation is a contractor's equipment, parts, supply, and service company located in Omaha, Nebraska. Defendant corporation's office is located in Scottsbluff and its business is basically the construction of electric transmission lines or parts of them as a subcontractor with its work being performed in various locations in and out of the State of Nebraska. Generally when defendant needed a part for its equipment or needed equipment the order would be called in to the plaintiff's office. Plaintiff would then ship the item directly to defendant at Scottsbluff or to the defendant's job site and then invoice the item to defendant, thereafter posting the charge to its ledger. Plaintiff mailed de-

fendant a monthly statement of the account showing the invoice date, invoice number, the charge, the credits, and the balance owing.

Defendant generally paid by invoice either singularly or in a group and defendant's check in each case specified the invoice or invoices being paid. Defendant's president testified the defendant tried to pay by invoice so that the cost of the item could be charged to the job defendant was then performing and that defendant never paid by plaintiff's monthly statement of account unless the statement was in the exact amount of the invoice or invoices to be paid. There are minor date posting errors between plaintiff's ledger sheets and the dates of some of the invoices, but they are considered to be of no significance to a decision in this case. The account according to plaintiff's ledger had one charge and one payment in 1967. Eleven charges and three payments, together with one credit memorandum, appear in 1968. In 1969, prior to July 14, 1969, there were two charges, two payments, and two credit memorandums. On July 14, 1969, the account had a zero balance.

The evidence shows defendant made payment within 30 days and up to 4 months after being invoiced between July 14, 1969, and December 30, 1970. In June and July 1969, plaintiff performed services on and supplied parts for defendant's Poclain back hoe which resulted in defendant being sent three invoices, dated August 14, 1969, for $1,942.82 for a boom for the back hoe; August 18, 1969, for $269.65 for labor on and small parts for the back hoe; and August 27, 1969, for $6,098.51 for hydraulic parts and services on the back hoe. The terms of payment stated on each invoice were "Net 10th Prox." Defendant was invoiced on July 31, 1969, for $1,948.20 for a Morgan conveyor and its assembly shipped by plaintiff on July 7, 1969, which was not related to the back hoe. On August 20, 1969, defendant was invoiced for $428.40 for an item related to the Morgan

conveyor and shipped by plaintiff on August 5, 1969. On August 30, 1969, defendant was invoiced for $40.41 for a chute, chain, and pin not related to the back hoe which was shipped by plaintiff on August 27, 1969, for which defendant issued its check on October 31, 1969, but which was not shown on plaintiff's ledger as a credit until December 31, 1969. On September 18, 1969, defendant was credited with payment of the invoices of July 31 and August 20, 1969, and by September 18, 1969, defendant had communicated its refusal to pay the plaintiff for the invoices of August 14, 1969, August 18, 1969, and August 27, 1969. Between August 21, 1969, and September 30, 1969, plaintiff sent invoices to defendant for parts and materials shipped in April, May, June, July, and up to August 25, 1969, and for equipment rental, none of which related to the back hoe. These invoices were paid as a group by defendant's check issued October 31, 1969, but are not shown on plaintiff's ledger. On December 19, 1969, plaintiff issued a credit memorandum crediting defendant's account for $1,076.75 which applied to one of the disputed invoices and was for reusable parts plaintiff had taken off of defendant's Poclain back hoe. After August 27, 1969, defendant made no purchases from plaintiff until it ordered a decal for a Grove crane on February 9, 1970, which was shipped on February 16, 1970, and invoiced to defendant on February 23, 1970, at a cost of $15.58. This invoice has never been paid.

After the purchase of the decal, above mentioned, defendant was invoiced on May 7, 1970, for two tampers, which were not related to the back hoe, shipped on April 16, 1970, and defendant's account was credited with payment on May 26, 1970. Defendant was invoiced for a tamper part and carburetor on June 24, 1970, which items were not related to the back hoe and which were shipped by plaintiff on June 20, 1970. Defendant was credited with payment of that invoice on October 5, 1970. The last item,

a parts manual for a crane, was invoiced to defendant on November 23, 1970, and defendant's account was credited with payment on December 23, 1970.

The parties are in agreement that an action can only be brought on a verbal contract within 4 years and that section 25-206, R. R. S. 1943, is applicable.

A cause of action accrues and the statute of limitations begins to run when the aggrieved party has the right to institute and maintain a suit. Weiss v. Weiss, 179 Neb. 714, 140 N. W. 2d 15.

Plaintiff's invoices indicate the terms of payment to be "Net 10th Prox." This phrase is not defined in the evidence. The District Court found it to mean 10 days after the invoice.

In Webster's Third New International Dictionary, 1969, the abbreviation "Prox." is used following the word proximo which is defined as "of or occurring in the next month after the present."

Whether the statute commenced to run on September 6, 1969, or September 11, 1969, is of little difference under the facts. We conclude that the cause of action accrued on the disputed items on September 11, 1969, the day following the date plaintiff extended credit. "The statute of limitations begins to run against a cause of action to recover the purchase price or value of goods sold and delivered at the time of their delivery unless there is some agreement as to the time or manner of payment different from that which the law implies, which is that payment shall be made in cash on delivery. If a term of credit is given to the buyer the statute begins to run when, and only when, the period of credit has expired." 54 C. J. S., Limitation of Actions, § 137(b), pp. 60-61.

Thus, the statute of limitations ran on the disputed invoices on September 11, 1973, unless it was tolled.

The plaintiff does not claim that the statute was tolled by any of the statutory grounds set forth in section 25-216, R. R. S. 1943, but relies instead upon

the entry of the credit to defendant's account on December 19, 1969, in the sum of $1,076.75 and upon defendant's purchase of the $15.58 decal shipped by plaintiff on February 16, 1970, and invoiced to defendant on February 23, 1970, either of which plaintiff claims tolled the statute of limitations.

Plaintiff contends that its issuance of a credit memorandum on December 19, 1969, which was posted on plaintiff's ledger on December 31, 1969, crediting defendant's account for the value of the reusable parts from the back hoe, was sufficient to toll the statute to that date, and thus, since valid service was obtained on December 13, 1973, within 4 years of the entry of the credit memorandum, the statute of limitations was tolled.

The facts reflect plaintiff took the reusable parts in June or July 1969, when it worked on the back hoe, and did not credit defendant with the value of those parts until some 5 to 6 months later. Defendant did not request the credit and its issuance was purely the unilateral act of the plaintiff. Defendant did not object to the entry of the credit, but had by September 18, 1969, refused to pay the invoice to which the credit was applied.

Plaintiff cites Heineman v. Thimgan, 136 Neb. 357, 285 N. W. 920, for the proposition that a credit in favor of a debtor may, if duly applied as a part payment on the creditor's claim against the debtor, be sufficient for the purpose of interrupting the running of the statute of limitations. That case was a suit on an open account where the terms of payment were not specified for carpenter work and labor performed by plaintiff for defendant during the years 1923, 1924, 1925, 1927, and 1928. Plaintiff was then due $297.10 which remained unpaid. Thereafter, defendant in the years 1931, 1932, 1933, and 1934, did some work for the plaintiff for which he was entitled to be paid. Suit was commenced in 1937. The court

held that the plaintiff's indebtedness to the defendant was properly applied to reduce the amount of defendant's indebtedness to plaintiff and that this application of the debt amounted to part payment which tolled the statute of limitations. It is clear in the Heineman case that there was an open account and an affirmative act by the debtor. He simply made a part payment in services instead of money.

While the rule announced in Heineman v. Thimgan, *supra*, has application where an affirmative act is performed by the debtor entitling the creditor to reduce the debt by crediting the debtor, it does not apply where no affirmative voluntary act is performed by the debtor.

Section 25-216, R. R. S. 1943, provides, "In any cause founded on contract, when any part of the principal or interest shall have been voluntarily paid * * * an action may be brought in such case within the period prescribed for the same, after such payment * * *."

Broadly speaking, the rule that part payment tolls the statute of limitations is based on the theory that part payment "amounts to voluntary acknowledgment of the existence of the debt, from which the law implies a new promise to pay the balance." It follows, therefore, that for a part payment to have the effect of tolling the statute of limitations, it must be made under such circumstances as to fairly warrant the inference that the debtor recognizes the whole of the debt as an existing liability. 51 Am. Jur. 2d, Limitation of Actions, § 366, p. 855.

In Beacom v. Daley, 164 Neb. 120, 81 N. W. 2d 907, it was said: " 'A voluntary payment upon a claim otherwise barred by the statute of limitations is one that was intentionally and consciously made and accepted as part payment of the particular indebtedness in question under such circumstances as would warrant a clear inference that the debtor assented to

and acknowledged the greater debt to be due as an existing liability.' "

In the present case defendant took no affirmative action to seek the credit. Thus, no inference can arise that defendant assented to and acknowledged the greater debt to be due and in fact defendant had refused to pay the debt.

In 51 Am. Jur. 2d, Limitation of Actions, § 380, p. 864, it is said: "The mere entry of a credit on a debt by a creditor without the consent of his debtor is generally conceded to be without effect upon the statute of limitations; also, it seems that the mere fact that the debtor knows of an unauthorized entry of credit and makes no objection thereto is not alone sufficient to constitute a ratification of the credit so as to toll the statute of limitations." We therefore hold that the credit memorandum issued by the plaintiff on December 19, 1969, after defendant's refusal to pay the invoice, did not have the effect of tolling the statute of limitations.

Coming now to plaintiff's last contention that the purchase of the decal which was shipped by plaintiff on February 16, 1970, took the earlier items out of the bar of the statute of limitations, we find that this court has recognized the rule that the latest item of a continuous account removes prior items from the operation of the statute of limitations. Thus, in Wellnitz v. Muck, 182 Neb. 22, 152 N. W. 2d 1, plaintiff had sold defendant implements and parts, and had rendered services over a 12-year period. Suit was commenced on August 4, 1965. The evidence indicated no payments were made by defendant after 1959, but defendant made 5 purchases in 1961 prior to August 5, 1961, and one purchase on August 5, 1961. The court held the rule applicable to the items purchased in 1961 only, stating: "Transactions may be independent because of special contracts, long intervals, or other circumstances." Recovery for the purchases prior to 1961 was denied because the pur-

chases were unrelated to the 1961 purchases and because of the inactivity of the account. In Wellnitz v. Muck, *supra*, there was no agreement as to the time of payment and this we believe is an important consideration which we will discuss later in this opinion.

The case of Lewis v. Hiskey, 166 Neb. 402, 89 N. W. 2d 132, is also pertinent to a determination of this case. There, plaintiff sued on an account for petroleum products sold to defendant wherein no time for payment of the purchases was specified. Defendant was served with summons on December 14, 1955. The date of the last purchase was December 15, 1951. The account had run from December 21, 1950, to the date of the last purchase and the purchases were related to each other in nature, that is, petroleum products. Plaintiff's ledger showed all charges, dates thereof, and all items of credit for payments made, none of which were in payment of any specific purchase. This court held that the purchase made on December 15, 1951, took the earlier purchases out of the operation of the statute saying, "In 54 C. J. S., Limitation of Actions, § 165, p. 118, citing In re Estate of Holloway, *supra*, [89 Neb. 403, 131 N. W. 606] and other authorities, it is said: 'In order for later items to take earlier items out of the operation of the statute of limitations the account must be continuous; and where the transactions between the parties are independent and remote, the rule does not apply.' "

Unfortunately, this court has never distinguished the various types of accounts and the rules, set forth in 54 C. J. S., § 165, p. 118, apply only to mutual accounts current whereas we have applied it in the past indiscriminately to simple open running accounts, continuous accounts, and the like. Nevertheless, the rule is understood and is the law of Nebraska.

The only evidence presented by the plaintiff in this case was a copy of plaintiff's ledger and the three

disputed invoices. The balance of the evidence was offered by the defendant including the testimony of defendant's president.

The Kansas Supreme Court in Sheldon Grain & Feed Co. v. Schuetz, 207 Kan. 108, 483 P. 2d 1033, speaking of mutual open running accounts, states: "Openness may be indicated when further dealings between the parties are contemplated and when some term or terms of the sale or sales is left open and undetermined." We feel that such statement is applicable to a determination of "openness" in any type of account.

Here there can be little doubt the parties contemplated further dealings with each other since the parties had done business between 1967 through most of 1970; however, it must be pointed out that plaintiff's own invoices set the terms of the sale on each invoice, "Terms: Net 10th prox.," which we find to mean that payment of each invoice was due on the 10th day of the month following the date of invoice. Thus, since plaintiff set the date for payment of each invoice, it follows that upon nonpayment by the 10th day of the month following the date of invoice, the purchase or purchases on each invoice became a separate cause of action and the transactions between the parties became independent of one another. The record reflects that in answer to defendant's "Second Request for Admissions and Written Interrogatories," which were received into evidence, the plaintiff admitted it accepted the checks from the defendant in payment of the invoices listed on the checks. The inference to be drawn from this admission is that plaintiff did not accept the defendant's checks as payment on an open continuous account, but rather upon the invoice or invoices listed. Plaintiff therefore should not have applied each payment upon the balance of the account. A period of over 6 months elapsed between the purchase of the disputed items and the date of the purchase of the

decal. This would seem to indicate remoteness in the dealings between the parties during the important period here involved.

We also believe the purchase of the decal for a Grove crane was unrelated to the purchase of a boom for the Poclain back hoe, hydraulic parts for the back hoe, and the labor performed on the back hoe. Unlike the items for which recovery was allowed in Wellnitz v. Muck, *supra*, which were found to be interrelated closely in time and subject matter, the disputed items here do not relate in their nature or, under the evidence, to the decal.

Because the terms of sale were specified by the plaintiff on each invoice, both Wellnitz v. Muck, *supra*, and Lewis v. Hiskey, *supra*, are distinguished, and we find the purchase of the services, boom, and hydraulic parts in July 1969 were not saved by the purchase of the decal shipped in February 1970.

Admittedly, the case is close, but we cannot say as a matter of law that the District Court was clearly wrong and therefore the judgment is affirmed.

AFFIRMED.