SODORO, DALY & SODORO, P.C., A NEBRASKA PROFESSIONAL CORPORATION, APPELLEE, V. KATHLEEN J. KRAMER, APPELLANT.
679 N.W.2d 213

Filed May 7, 2004.   No. S-03-154.

Jeffrey T. Palzer, of Kellogg & Palzer, P.C., for appellant.

Mary M. Schott, of Sodoro, Daly & Sodoro, P.C., for appellee.

Hendry, C.J., Wright, Connolly, Gerrard, Stephan, McCormack, and Miller-Lerman, JJ.

Gerrard, J.

## NATURE OF CASE

This is an action for attorney fees incurred during lengthy and complicated divorce proceedings. See, *Kramer v. Kramer*, 252 Neb. 526, 567 N.W.2d 100 (1997); *Kramer v. Kramer*, 1 Neb. App. 641, 510 N.W.2d 351 (1993) (appeals of underlying case). The question presented in this appeal is whether the statute of limitations on the law firm's action for attorney fees ran from the time that the law firm's employment by the client ended, or from the date on which the law firm received the client's appeal bond and credited that money to her account.

## BACKGROUND

Kathleen J. Kramer, the defendant below and appellant in this court, employed the law firm of Sodoro, Daly & Sodoro (Sodoro) in February 1989 to represent her in her divorce proceedings. Specifically, Kramer hired Peter C. Bataillon, a Sodoro attorney. Kramer's final appeal was argued before this court on April 2, 1997, our decision was filed on May 23, and our mandate issued on June 5. The mandate was spread on the record by the Sarpy County District Court on June 10. In April, prior to our decision, Bataillon left Sodoro. Kramer continued to employ Bataillon with respect to her divorce and no longer employed Sodoro.

Sodoro records indicate that at the time Bataillon left the firm, Kramer owed Sodoro a balance of $16,995.02. The last charge in Kramer's account was a fee transaction dated April 4, 1997, for "preparation of correspondence to client regarding oral argument." The notation "PCB" next to the charge presumably referred to Bataillon. The final transactions in the account, however, were dated June 19 and were designated as "payment transactions." There were three separate transactions on that date. The first and second each were for the "return of unused portion of filing fee from court return of Supreme Court cost bond - clerk of Sarpy County District Court." The third was a "Reimbursement from St. Paul for expert witness return of Supreme Court cost bond - clerk of Sarpy County District Court." The three amounts,

totaling $188.50, were credited to Kramer's account balance. For convenience, we will refer to these transactions collectively as the "appeal bond." After these credits, Kramer's balance stood at $16,806.52. Sodoro records reveal no activity on the account after the June 19, 1997, credits.

Sodoro filed the petition in the instant case on June 7, 2001. The petition alleged, as pertinent, that Sodoro had rendered professional legal services to Kramer in her divorce action, that "various charges were made for these services and that the grand total for these legal services and expenses incurred was in the sum of $16,510.82," and that Kramer had failed to pay. Kramer's answer affirmatively alleged the defense of the statute of limitations. Kramer subsequently filed a motion for summary judgment based on her statute of limitations defense. Although the transcript does not contain an order disposing of that motion, it is apparent from later proceedings that the motion was denied. Sodoro then filed a motion for summary judgment. The district court determined, inter alia, that the statute of limitations on Sodoro's claim for fees began to run on June 19, 1997, when Sodoro received and accounted for the appeal bond. Finding no other issue of material fact, the district court entered summary judgment for Sodoro. Kramer appeals.

## ASSIGNMENTS OF ERROR

Kramer assigns, consolidated and restated, that the district court erred in overruling her motion for summary judgment and sustaining Sodoro's because (1) Sodoro's action was barred by the statute of limitations and (2) there was a genuine issue of material fact as to the amount owed.

## STANDARD OF REVIEW

In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Misle v. HJA, Inc., ante* p. 375, 674 N.W.2d 257 (2004). Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those

facts and that the moving party is entitled to judgment as a matter of law. *Id.*

Sodoro argues that " '[t]he point at which a statute of limitations begins to run must be determined from the facts of each case, and the decision of the district court on the issue of the statute of limitations normally will not be set aside by an appellate court unless clearly wrong.' " Brief for appellee at 5, quoting *Nebraska Popcorn v. Wing*, 258 Neb. 60, 602 N.W.2d 18 (1999), and citing *Reinke Mfg. Co. v. Hayes*, 256 Neb. 442, 590 N.W.2d 380 (1999). However, this level of deference does not apply to an appellate court's review of a grant of summary judgment; the governing standard of review for an order of summary judgment should be, and continues to be, one favorable to the nonmoving party. See *Controlled Environ. Constr. v. Key Indus. Refrig.*, 266 Neb. 927, 670 N.W.2d 771 (2003).

## ANALYSIS

■ The parties agree that the statute of limitations at issue in this case is Neb. Rev. Stat. § 25-206 (Reissue 1995), which provides that "[a]n action upon a contract, not in writing, expressed or implied . . . can only be brought within four years." Kramer relies on the rule that "where services are rendered under a contract of employment which does not fix the term of service or the time for payment, the contract is continuous and the statute of limitations does not commence to run until the employee's services are terminated." *In re Estate of Baker*, 144 Neb. 797, 803, 14 N.W.2d 585, 589 (1944). Accord, *Weiss v. Weiss*, 179 Neb. 714, 140 N.W.2d 15 (1966); *Phifer v. Estate of Phifer*, 112 Neb. 327, 199 N.W. 511 (1924). See, e.g., *Maksym v. Loesch*, 937 F.2d 1237 (7th Cir. 1991); *Jenney v. Airtek Corp.*, 402 Mass. 152, 521 N.E.2d 388 (1988). Kramer argues that Sodoro's service to her was terminated when Bataillon left the firm in April 1997 and that Sodoro's June 2001 filing against her was untimely.

Sodoro does not dispute that Bataillon left the firm more than 4 years before it filed suit against Kramer. However, Sodoro argues that receipt of the appeal bond and crediting that amount to Kramer's account was a "service" to Kramer sufficient to restart the statute of limitations.

■ Sodoro contends that its receipt of the appeal bond and credit to Kramer's account was part of its employment relationship

with Kramer, such that the statute of limitations began to run at that time. Before disposing of this argument, however, it is necessary to consider more basic principles of law. A period of limitations begins to run upon the violation of a legal right, that is, when the aggrieved party has the right to institute and maintain suit. *Manker v. Manker*, 263 Neb. 944, 644 N.W.2d 522 (2002). Applying that proposition in the instant case requires us to determine the nature of Sodoro's cause of action. For that, we turn to the pleadings. The issues in a case are framed by the pleadings. *Rush v. Wilder*, 263 Neb. 910, 644 N.W.2d 151 (2002). The essential character of an action and relief sought, whether legal or equitable, is determinable from its main object, as disclosed by the pleadings. *Scherbak v. Kissler*, 245 Neb. 10, 510 N.W.2d 318 (1994).

For the reasons set forth below, we conclude that Sodoro's cause of action is best characterized as an action on an open account. An action on an open account is the appropriate cause of action under the circumstances presented, given that the action is based in contract, there have been a number of transactions between the parties, the terms of payment are not specified by the contract, and the central issue is the discrete legal effect of one of those transactions.

" '[A]n action on account or open account is appropriate where the parties have conducted a series of transactions for which a balance remains.' " *Pipe & Piling Supplies v. Betterman & Katelman*, 8 Neb. App. 475, 482, 596 N.W.2d 24, 30-31 (1999), quoting 1 C.J.S. *Account, Action On* § 3 (1985).

> An "action on account" has been defined as an action of assumpsit or debt for the recovery of money only for services performed, property sold and delivered, money loaned, or damages for the nonperformance of simple contracts, expressed or implied, when the rights of the parties will be adequately conserved by the payment and receipt of money.

1 C.J.S., *supra*, § 2 at 605. See, also, *Moore v. Schank*, 148 Neb. 228, 27 N.W.2d 165 (1947); *Pipe & Piling Supplies, supra.*

Sodoro's petition, and the evidence submitted in support of its motion for summary judgment, establish a prima facie case for an action on an account. See, *Florist Supply of Omaha v. Prochaska*,

244 Neb. 776, 509 N.W.2d 209 (1993); *Moore, supra*; *Pipe & Piling Supplies, supra.* More important, however, is that Sodoro's argument presents a question which can be answered only by analyzing this case as an action on an account. Sodoro's argument on the statute of limitations issue is based solely on the June 19, 1997, account entry, and the account entry is the sole basis to be found in the record for concluding that Sodoro's action was timely filed. Sodoro's argument requires us to determine the legal effect of the June 19 account entry, and this determination can be made only within the context of an action on the account.

At common law, the rules governing actions on accounts differed depending on whether the account was mutual, simple, open, or stated. See, generally, *State, Etc. v. Hintz*, 281 N.W.2d 564 (N.D. 1979) (explaining different types of accounts). However, Nebraska law has never distinguished among most of the various types of accounts. *T. S. McShane Co., Inc. v. Dominion Constr. Co.*, 203 Neb. 318, 278 N.W.2d 596 (1979). The primary distinction recognized by Nebraska law is between an open account and an account stated. The instant case does not involve an action on an account stated, which is a new and independent cause of action founded on the agreed balance due upon the account rendered. *Sherrets, Smith v. MJ Optical, Inc.*, 259 Neb. 424, 610 N.W.2d 413 (2000). In such an action, the plaintiff must allege that the account was, in fact, stated and agreed to, although the failure to expressly allege the account stated may be waived by joining issue on the matter. *Id.* This case involves no such allegation.

Instead, the instant case is an action on an open account. Openness is indicated when further dealings between the parties are contemplated and when some term or terms of the contract are left open and undetermined. See *T. S. McShane Co., Inc., supra.* The critical factor in deciding whether an account is open is whether the terms of payment are specified by the agreement or are left open and undetermined. See *id.* Here, the terms of payment are clearly open and undetermined.

It is well established that in an action on an open account, where the dealing between the parties was continuous, each succeeding item is applied to the true balance, and the latest item of the account removes prior items from the operation

of the statute of limitations. See, *Wellnitz v. Muck*, 182 Neb. 22, 152 N.W.2d 1 (1967); *Lewis v. Hiskey*, 166 Neb. 402, 89 N.W.2d 132 (1958). However, not every entry in an account is an "item" that restarts the statute of limitations. In particular, the mere entry of a credit by a creditor without the consent of the debtor is generally conceded to be without effect upon the statute of limitations. See *id.* In this regard, Kramer calls our attention to Neb. Rev. Stat. § 25-216 (Reissue 1995), which provides that

> [i]n any cause founded on contract, when any part of the principal or interest shall have been voluntarily paid, or an acknowledgment of an existing liability, debt or claim, or any promise to pay the same shall have been made in writing, an action may be brought in such case within the period prescribed for the same, after such payment, acknowledgment or promise . . . .

Based in part on § 25-216, we have consistently held that for a part payment to remove the bar to recovery imposed by the statute of limitations, the payment must be made under circumstances which warrant a clear inference that the debtor recognizes and acknowledges the entire debt as the debtor's existing liability, and must demonstrate the debtor's willingness or obligation to pay the balance of the debt. See, *Castellano v. Bitkower*, 216 Neb. 806, 346 N.W.2d 249 (1984); *T. S. McShane Co., Inc. v. Dominion Constr. Co.*, 203 Neb. 318, 278 N.W.2d 596 (1979); *Hejco, Inc. v. Arnold*, 1 Neb. App. 44, 487 N.W.2d 573 (1992).

The theory underlying this rule is that when a part payment amounts to a voluntary acknowledgment of the existence of the debt, the law implies a new promise to pay the balance. See, *T. S. McShane Co., Inc. v. Dominion Constr. Co., supra*; *Hejco, Inc., supra*. But merely crediting Kramer's account for property returned by a third party does not support such an implication. See *T. S. McShane Co., Inc., supra* (credit for returned parts raised no inference that defendant assented to or acknowledged greater debt). Such a rule would, under many circumstances, permit parties to manipulate the statute of limitations by transferring funds or otherwise manipulating credit to the account.

Sodoro evidently recognizes that the circumstances here would not support a finding that the credit to Kramer's account was a

ratification of the debt. Instead, Sodoro states that it has never argued that crediting Kramer's account was a part payment that would have restarted the statute of limitations. While this may be the case, Sodoro may be missing the point: If the credit was not a part payment, then there is no other persuasive characterization under which the credit will serve to bring Sodoro's petition within the statute of limitations.

It is the latest item of the account which removes prior items from the operation of the statute of limitations. See, *Wellnitz v. Muck*, 182 Neb. 22, 152 N.W.2d 1 (1967); *Lewis v. Hiskey*, 166 Neb. 402, 89 N.W.2d 132 (1958). Not every entry in an account is an "item," however. The last item in an open account, for statute of limitations purposes, is the final underlying transaction which represents a legal indebtedness. See *T. S. McShane Co., Inc., supra*. See, also, *Jordan v. United States*, 180 F. Supp. 950 (E.D. Wis. 1960); *Eagle Water Co. v. Roundy Pole Fence Co.*, 134 Idaho 626, 7 P.3d 1103 (2000); *Am. Homes v. Broadmoor Corp.*, 153 Mont. 184, 455 P.2d 334 (1969). This definition is consistent with the theory underlying the rule, i.e., that the statute restarts because each succeeding item is applied to the true balance of the open account. See, *Wellnitz, supra*; *Lewis, supra*. An item that incurs legal indebtedness implies a new promise to pay the entire balance, just as part payment does when the circumstances demonstrate the intent of the debtor to ratify the entire debt. See *T. S. McShane Co., Inc., supra*.

In this case, Kramer's account was credited due to the return of the appeal bond. Sodoro argues that since advancing the appeal bond was a service to the client, receiving and accounting for the bond is also a service to the client. There is little question that disbursing an attorney's private funds for the client's benefit (to the extent permitted by Canon 5, DR 5-103(B), of the Code of Professional Responsibility) is a proper charge on an account, and is an item that can serve to remove prior items from the statute of limitations. See *Sibley v. Rice*, 58 Neb. 785, 79 N.W. 711 (1899). But receiving an appeal bond, and crediting that amount to a client's account, does not incur legal indebtedness on the part of the client. In the instant case, although Sodoro claims to have performed a "service" to Kramer by receiving the bond, Sodoro did not *charge* Kramer for the performance of a service.

Instead, Sodoro simply credited Kramer's account for returned property—which, standing alone, would not restart the statute of limitations if Kramer had returned the property herself, much less when the property was returned by a third party. See *T. S. McShane Co., Inc. v. Dominion Constr. Co.*, 203 Neb. 318, 278 N.W.2d 596 (1979).

Simply stated, Sodoro's purported "service" to Kramer did not involve providing legal services, as it was only incidentally related to furthering the client's interest; accounting for the appeal bond primarily advanced Sodoro's interest in collecting compensation for services that had already been provided. See *Gamm, Greenberg & Kaplan v. Butts*, 508 So. 2d 633 (La. App. 1987). See, e.g., *Jordan, supra* (credit for overpayment on mutual account did not fix new liability of parties); *Eagle Water Co., supra* (credit for return of tractor was not "item" that commenced running of statute of limitations); *Am. Homes, supra* (credit for payment or for goods returned is not "item" in account for purposes of determining deadline for filing mechanic's lien); *T. S. McShane Co., Inc., supra.*

In short, we conclude that Kramer's employment of Sodoro ended in April 1997 and that Sodoro's receipt of the appeal bond and credit of that amount to her account did not restart the running of the statute of limitations on Sodoro's cause of action against Kramer. Kramer's first assignment of error has merit and is dispositive of this appeal. Kramer's statute of limitations defense was meritorious, and she was entitled to judgment in her favor as a matter of law.

## CONCLUSION

Sodoro's petition states a cause of action on an open account and must be characterized as such. The last entry in that account, and the only entry that could bring Sodoro's petition within the 4-year statute of limitations on oral contracts, represents neither legal indebtedness nor a part payment from which the law can infer a new promise to pay the entire indebtedness. Thus, Sodoro's action is barred by the statute of limitations.

■ Although the denial of a motion for summary judgment, standing alone, is not a final, appealable order, when adverse parties have each moved for summary judgment and the trial court

has sustained one of the motions, the reviewing court obtains jurisdiction over both motions and may determine the controversy which is the subject of those motions or make an order specifying the facts which appear without substantial controversy and direct further proceedings as it deems just. *Unisys Corp. v. Nebraska Life & Health Ins. Guar. Assn., ante* p. 158, 673 N.W.2d 15 (2004). Given our reasoning above, it is apparent that Kramer is entitled to judgment as a matter of law based on the statute of limitations. Therefore, we reverse the judgment of the district court and remand the cause to the district court with direction to dismiss Sodoro's petition.

REVERSED AND REMANDED WITH
DIRECTION TO DISMISS.